JANUARY 1827.

Braughan et al
v.
The Tombeckbee Bank.

---

## TOULMIN v. BUCHANAN's Executors.

A father having given some slaves to his son-in-law at the marriage; some months afterwards, and being indebted to more than the value of his property, gives him another slave. This latter gift is not fraudulent per se, though from the circumstances, if corroborated by others, the jury may infer fraud.

TROVER in the Circuit Court of Washington county, by Theophilus L. Toulmin against Buchanan, fo a negro man slave. General issue, verdict and judgement for defendant.

The plaintiff claimed the slave under a gift from James Caller, the father of his wife; he was married in the early part of the summer, and the gift was made in the succeeding fall. At the time of his marriage, he received four or five negroes from his father-in-law. At the time of the gift, Caller was much embarrassed by debts, more than he was able to pay, and shortly afterwards died. The negro in question was levied on in possession of his executrix as part of his estate, and bought by Buchanan at sheriff's sale.

The Circuit Court charged the jury that, if at the time of making the gift, Caller's just debts exceeded a fair valuation of his property, and it could not be made without prejudice to his creditors, it was void as to them. To which the plaintiff excepted, and assigned this matter here as error.

Buchanan having died, his executors were made parties.

PARSONS, for plaintiff in error.

The question presented by the bill of exceptions is, can a man who is indebted, make any advances to his children who have married, in order to set them up in the world? From the charge of the Court, it would seem that if the creditors run any probable risk of being injured by the gift, it is in law void. But the law seems to be, that a man possessed of property may make reasonable advances to his children, and if he did not intend fraud, the gift would be valid. [a]

*a* 3 Dessaus, 1 to 4

If the law be otherwise, a man of much property may make reasonable advances to his children acting in good faith, but if he is involved in unexpected misfortunes or dies, and his estate is mismanaged, though his whole conduct may have been most fair and honorable, he is to be deemed guilty of fraud. Fraud in equity may be presumed from circumstances, but at law, it must be proved. [b]

*b* 1 Dessaus, 300.

The charge was too broad and too uncertain as to the time of the donor's embarrassment; the extent of the excess of his debts beyond his means of payment, and as to his fraudulent intent in the gift. His children as well as his creditors, had claims on his justice, they were creditors by blood.

RUFFIN, for defendant in error.

The plaintiff mistakes the principle from which the charge proceeded. The charge is on this question, can

a man by a gift to a child, for whom, for aught that ap-
pears, he has already provided comfortably, destroy the
claims of his creditors on the property on which they
relied when they gave him credit? If the creditor must
lose his debt, or the child the slave given to her, surely
the donee ought to be postponed to the creditor. The
charge went no farther than this. It was in effect, that
in order to sustain the gift against the claims of the cre-
ditors, it must be such an one s could have been made
with out : rejudice to them. Here the father appears to
have advanced her marriage portion to his daughter, im-
mediately on her marriage; the slave which was the sub-
ject of the controversy was not given till some months
afterwards, and does not appear to have been delivered
to the donee at all. The sheriff found and levied the ex-
ecution upon the slave, in the possession of the executrix
of the donor. Why did the plaintiff suffer Buchanan to
buy a law suit? Why did he not interpose his claim and
have a trial of the right of property, before the sheriff's
sale? His silence amounts to a constructive fraud, and
the controversy here is, between one who against the
creditors of Caller, and purchasers under executions
against him, has no equity, and an innocent purchaser.

Mr. Ruffin was not present at this term. The argu-
ment was made by the written briefs of the counsel.

JUDGE CRENSHAW delivered the opinion of the
Court.

The substance of the charge appears to have been, that
if Caller's just debts exceeded a fair valuation of his pro-
perty, and the gift was to the prejudice of his creditors, it
was absolutely void. These were circumstances to be
left to the jury, and if connected with others sufficiently
strong, they might infer that the gift was originally in-
tended as a fraud upon creditors, and therefore void.
But unconnected with other circumstances of fraud on
the part of Caller, the mere fact that his debts exceeded
the value of his property, and that the gift was to the pre-
judice of his creditors, were not of themselves sufficient
to authorize the court or jury to infer that the gift was
fraudulent and void. But the charge seems to have pro-
ceeded on the supposition that it was not necessary to es-
tablish fraud in the donor in order to avoid the gift, and
that if it was even made *bona fide* and with no intention

of injuring the rights of creditors, yet it was void *per se*, because the donor was in debt beyond his ability to pay, and the gift did an injury to creditors. If this be the correct doctrine, no man who owes as much as his property is worth can make a valid gift, however small its value; for he would thereby diminish his ability to pay his debts and injure the rights of his creditors. It is true that the debts are generally contracted on the credit of the debtor's property, but this is far from being the only source of credit. The creditor frequently looks perhaps more to the debtor's skill in business. honesty and industry, than to the value of his property. The debt cannot have such lien on the debtor's property, as to prevent even voluntary alienations, unless made in bad faith, or under such circumstances as induced the belief that they were intended to defraud creditors. Here, if Caller had made a gift of the whole of his estate, the law would declare it fraudulent *per se*, and void as against creditors; but when the gift was of a part only of his property made to his son-in law a few months after marriage, it was *prima facie* in advancement of the marriage, which is deemed in law a valuable consideration, and was not void or fraudulent *per se*, but a circumstance which if corroborated by other circumstances, might have authorized the jury to infer fraud. The judgment must be reversed and the cause remanded.

The CHIEF JUSTICE and Judge GAYLE not sitting.