### JAMES K. WILSON *v.* C. F. KOHLHEIM.

1. CIRCUIT COURT—INSTRUCTIONS—RIGHT TO MODIFY.—The circuit court is not bound to give instructions to the jury in the language in which they are propounded by the party asking them, but may and should modify them to make them correct.

2. FRAUD—STATUTE OF FRAUDS—VOLUNTARY CONVEYANCE BY FATHER TO HIS SON.—A voluntary conveyance of property by a father to his son in consideration of love and affection, is not fraudulent and void *per se*, as to existing creditors. Whether it is fraudulent or not, is to be ascertained, not from the mere fact of indebtedness at the time, but from all the circumstances of the case; and, if the circumstances do not establish fraud, the voluntary conveyance is deemed to be above all exception. Whether it shall be void or not in such case, as a general proposition, depends upon the condition of the grantor, as to his ability to pay his debts out of his remaining property at the time of the conveyance being made.

3. ERRONEOUS INSTRUCTIONS NO GROUND FOR REVERSAL WHERE THE VERDICT IS RIGHT. — Where, upon the whole case, the verdict is found to be right, this court will not disturb it because the circuit court erred in its action upon the instructions.

ERROR to the circuit court of Lee county. LOVERING, J.

The facts of this case, as affecting the main question discussed and decided by the court, are fully stated in the opinion of the court.

The third instruction given for the plaintiff below, and which this court pronounced inapplicable to the facts, and, therefore improper, need not be given here. The ninth instruction for plaintiff below, pronounced erroneous here, is in words and figures, as follows, viz. : "By a statute of this state, Hutch. Code, p. 609–10, § 25, in force at the time of the purchase of the land in controversy by John R. Anderson, at sheriff's sale, September 1, 1856 (which statute is still in force) it was and is unlawful for any tenant for life to buy in the inheritance as against the remainder-man, so as to defeat or in any wise affect the remainder, and if the jury find from the testimony that the deed of gift in this case of March 31, 1854, was executed in good faith and duly recorded, and was accepted by John R. Anderson as tenant for his life of the land in controversy, with remainder

over as therein expressed, than any purchaser of the inheritance by him at sheriff's sale, as against the remainder-man, vested no title in fee simple, either in himself or in James K. Wilson, as subsequent purchaser from him as against the rights of the plaintiff as remainder-man in said deed."

It is unnecessary to state the five charges refused to defendant below, because the principles involved in their refusal (which is approved by this court) are embraced in the decision of the court upon the ninth instruction, *supra*, and upon the main question in the case.

*Harris & Withers* and *J. A. Green*, for plaintiff in error.

Our statute of frauds is a substantial transcript of the statute of the 13th Elizabeth, ch. 5. In construing this statute, the English courts have, since the case of Shaw v. Standish, 2 Vern. 326, uniformly drawn a distinction between creditors who were such at the date of a voluntary conveyance and subsequent creditors, holding that, as to the former, the conveyance was absolutely void, but, as to the latter, it might or might not be void, owing to the circumstances of each particular case. As to existing creditors, the fraud was a conclusion of law; as to subsequent creditors, it was a question of fact. The case of Bullitt, Miller & Co. v. Taylor & Richardson, 34 Miss. 745, states the distinction thus: "The only material difference between the operation of the statute upon the two classes of creditors is that, as to subsisting creditors, the voluntary conveyance is void *per se*, and no further proof is required to avoid it than to show that the debt was a valid, subsisting one at the time of the conveyance, whereas in case of subsequent creditors, it is necessary to establish by proof that the conveyance was made with intent to hinder, delay or defraud such creditors; and every such case depends mainly upon its own circumstances." Lord Hardwicke, in Townsend v. Windham, 2 Ves. 10, says: "I know of no case on the 13th Elizabeth where a man, indebted at the time, makes a

voluntary conveyance to a child, and dies indebted, but that it shall be considered a part of his estate for the benefit of his creditors." In Nunn & Ludsbrooke v. Wilsmore, 8 Term Rep. 521, the court says: "If the deed be voluntary, the law says it is fraudulent." Here the count was speaking of existing creditors.

Chancellor Kent, after a full review of all the English cases, in his celebrated opinion in Reade v. Livingston, 3 Johns. Ch. 500, 501, says: "The conclusion to be drawn from the case, is, that if the party be indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstance will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. The presumption of law in this case does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party. There is no such line of distinctions set up or traced in any of the cases. The attempt would be embarrassing, if not dangerous to the rights of the creditor, and prove an inlet to fraud. The law has, therefore, wisely disabled the debtor from making any voluntary settlement of his estate to stand in the way of his existing debts."

The supreme court of the United States has fully recognized the distinction. In the leading case of Sexton v. Wheaton, 8 Wheat. 225, Chief Justice Marshall, delivering the opinion of the court, says: "In construing this statute, the courts have considered every conveyance not made on consideration deemed valuable in law, as void against previous creditors. With respect to subsequent creditors, the application of this statute appears to have admitted of some doubt." See, also, Backhouse, Admr., v. Jetts, Admr., 1 Brock. 510, 511. The courts of last resort in North Carolina, Alabama and Illinois have held the same doctrine. O'Daniel v. Crawford, 4 Dev. 197, 217; Mordecai v. Parker, 3 ib. 427; Miller v. Thompson, 3 Porter (Ala.),

196; Moore v. Spence, 6 Judge (Ala.), 506; Costillo v. Thompson, 9 ib. 945; Choleau v. Jones, 11 Ill. 318.

The high court of errors and appeals of this state is fully committed by repeated adjudications to the construction of the statute as settled by the English courts, and re-affirmed in Reade v. Livingston, and O'Daniel v. Crawford.

In the case of Bogard v. Gardley, 4 Smedes & Marsh. 302, a party had purchased a slave and had the bill of sale made to his son, but was indebted at the time. Justice Thacher, delivering the opinion of the court, says, "That such a gift under such circumstances, according to the best received authorities, cannot be sustained. A voluntary conveyance will never be upheld to defeat a prior creditor, whatever be the amount of his demand; and there is no exception in favor of dispositions made by parents in favor of children." Citing Doe, ex dem. O'Daniel v. Crawford, 4 Dev. 197, to which case we would invite the particular attention of the court, not only on account of its having been cited with approbation by our own court of last resort, and complimented by Judge Kent, in a note to his commentaries, (vol. II, p. 443), but because of the unanswerable reasoning of the judges who delivered the opinion of the court.

In Swayze et al. v. Doe, ex dem. McCrossin, 13 Smedes & Marsh. 317, McCrossin sued for certain lands, claiming them under a deed of gift from Bernard McCrossin. The defendants claimed to hold the land by virtue of a sale made by the sheriff under a judgment in attachment against the grantor. The debt was antecedent to the voluntary conveyance, but the judgment was subsequent to it. Justice Clayton, delivering the opinion of the court, says: "The deed was voluntary and without pecuniary consideration. It cannot stand as against a creditor whose debt was valid and subsisting at the date of the deed." In Well v. Treadwell, 28 Miss. 725, Justice Handy says of a voluntary conveyance of slaves by a husband to his wife: "But it cannot be sustained either at law or in equity against the creditors of the husband, who were such at the

time it was made ; though it is valid as to subsequent cred-
itors, if made *bona fide*, and not in contemplation of future
indebtedness." The case of Henry v. Fullerton, 13 ib.
631, was the case of a subsequent creditor seeking to avoid
a voluntary conveyance, and Chief Justice Sharkey, who
delivered the opinion of the court, evidently takes it for
granted that, as to existing creditors, voluntary convey-
ances are void, but says, "they are not necessarily void as
to subsequent creditors."

We feel justified in assuming that our first proposition is
fully established. It is sustained by the leading authorities,
both in England and America. More than all, so far as
this case is concerned, it is fully sustained by our own high
court of errors and appeals. That a voluntary conveyance
is absolutely void, as against existing creditors, is no longer
an open question in Mississippi. It has been deliberately
and directly adjudicated on several occasions ; and the
doctrine now cannot be shaken without overthrowing the
long and well-settled judicial policy of this state. This, we
feel sure, will not be done, especially as the rule is not only
sustained by the highest judicial authority, but is founded
in enlightened reason, and demanded by the best interests
of society. If this construction of the statute was regarded
as sound and conservative before the war by our judiciary,
much more is it important that it be rigidly adhered to in
these times of pecuniary disaster and distress, when the
temptation to provide for families, at the expense of credi-
tors, has largely increased by the loss of fortune and the
changed condition of the country.

If fraudulent intent is a conclusive presumption of law,
in favor of existing creditors, in every case where a party,
without valuable consideration, conveys his property away,
then this case must necessarily be reversed. Every instruc-
tion to the jury, given by the court on the trial below, was
based on the assumption that the *bona fides* of the voluntary
conveyances made by Charles Anderson was a question of
fact for the jury to determine, and not one of law for the

court to decide.  This was clearly error.  The instructions
are voluminous, and we deem it unnecessary to discuss them
*seriatim,* but it will be found that they are all predicated
on the idea that the *bona fides* of the transaction was a
question of fact for the jury, and that it was incumbent on
the defendant below to prove actual fraud, or fraudulent
intent.

Five of the instructions tendered by the defendant below
were refused, and the sixth was modified by inserting the
sentence:  "And was made to defraud creditors."   Thus
imposing on the defendant the necessity of proving actual
fraud in Charles Anderson in making the voluntary con-
veyance and submitting this as a question of fact to the
jury.

When it is borne in mind that all the material facts of the
case were agreed on and reduced to writing, and it was
further agreed that no evidence should be introduced to
contradict them, it will then be realized how gravely the
judge who tried the case below erred in the charges he gave
and refused to give the jury.   It was distinctly admitted
that the conveyance of Charles Anderson to John R. An-
derson was voluntary ; that at or about the same time he
voluntary conveyed "the bulk of his estate" to his chil-
dren, retaining no property liable to execution at law, that
he was indebted at the time to the Mobile and Ohio Railroad
Company, that he was sued on this indebtedness within eight
days after making the voluntary conveyances ; that, after a
vigorous and protracted defense, judgment was recovered
against him, on which *fieri facias* issued and was returned
*nulla bona ;* and that an *alias fieri facias* issued, which was
levied on the lands in contest, and that those lands were sold
by the sheriff and purchased by Jno. R. Anderson, who,
afterward, for a full consideration, sold and conveyed them
to Wilson.   We insist that, with these admissions before the
court, it was error to submit the question of fraud as a fact
to be found by the jury.   The admissions on the record
make even a stronger case than if the jury had brought in

a special verdict finding the facts, in order that the court might apply the law to the facts found. The facts being admitted, the fraud was a conclusive presumption of law, and the court should have so instructed the jury.

There are cases, especially in New York (where, by statute, fraud is always a question of fact for the jury), and the New England states, beginning with Salmon v. Bennett, 1 Day (Conn.) 525, decided in 1816, which, while holding to the general rule that a voluntary conveyance is fraudulent *per se* as to existing creditors, attempts to modify the rule to this extent: that where it clearly appears that there was no actual, fraudulent intent, and a voluntary conveyance is made to a child, if the grantor is in prosperous circumstances, and the gift is a reasonable provision for the child, comprehending but a small portion of the grantor's estate, and leaving ample funds unincumbered for the payment of the grantor's debts ; and when the tendency of the conveyance is not to impair the rights of creditors, then, and in such a case, the conveyance will not be presumed to be fraudulent against an existing creditor.

It is not at all incumbent on us to discuss this departure from the general rule, as the court of last resort of our state has so distinctly and emphatically adopted the rule and rejected the attempted modification. However, as opposing counsel refer to these cases, and the court below was evidently influenced by them, overlooking the decision of our own courts, we have concluded to briefly notice them, and show that the conveyances made by Charles Anderson do not even fall within the assumed exception to the rule.

In the first place Charles Anderson conveyed not "a small portion" of his property only. It is admitted in the record that he conveyed "the bulk of his estate."

He did not retain ample property subject to the payment of his debts. He retained nothing whatever subject to execution at law. The evidence of the witness Kohlheim, so far as it contradicts the facts agreed, is not to be considered. It is agreed that Anderson only retained foreign and

domestic bills of exchange, land warrants, and one horse. The very best evidence that he had nothing subject to levy, is that a writ of *fieri facias* was issued on the judgment against him, and was returned "*nulla bona*," and had finally to be levied on the property he had previously conveyed his children.

The conveyances made by Charles Anderson had "a direct tendency to impair the rights of his creditors." The necessary tendency of conveying all his property that was subject to execution was to hinder and delay his creditors in the collection of their just demands. Such was its actual effect in this case. " The law regards every act of a rational being as done with intent to accomplish an effect which it has a tendency to produce, when that effect is actually produced by it." From being a wealthy planter, possessed of a large estate in land, slaves, mules, etc., he so reduced his visible property by these voluntary conveyances, that Robbins, the attorney for the railroad, testified, that he did not know of any tangible property of Charles Anderson liable to execution, except what he had given his children ; and that in 1856 Anderson told him that he owned no property subject to execution. When this admission is taken in connection with the fact testified to by John B. Sale, that Charles Anderson, in 1855 or 1856, placed in his hands, for collection, bills of exchange for $6,000, drawn by his sons and sons-in-law, and requested suit to be brought on them, in the name of John J. Carson, a fictitious name, as he admitted, it is manifest, beyond a doubt, that the effect of the voluntary conveyances was not only to hinder and delay his creditors, but that Charles Anderson made them with that intent, and actually threw every possible impediment in the way to prevent the railroad company from collecting their demand against him. Much more might be urged under this head, but enough has been said to show clearly that this case is widely different from Salmon v. Bennett, and the cases which have followed it, and does not fall within the

exception to the general rule sought to be established by them.

Before leaving this branch of the subject, we deem it proper to notice the case of Hinds, Lessee, v. Longworth, 11 Wheat. 199, referred to by opposing counsel. It will be found on critical examination of this case, that it has been greatly misunderstood, and that it does not, in the slightest degree, commit the supreme court of the United States to the doctrine of Salmon v. Bennett. On the contrary, the principle announced by Chief Justice Marshall, in Sexton v. Wheaton, is assented to as the law of the court. In this case, the creditor relied upon evidence of fraud in fact to defeat the conveyance, "and it was in reference solely to the admissibility of evidence of the grantor's condition, for the purpose of rebutting evidence of actual fraud," that the court, per Thompson, J., used the language quoted by judge Story, in §§ 362, 362 a, of his Eq. Jur. In the learned notes on Sexton v. Wheaton, 1 Amer. Lead. Cas. 38, 39, the case of Hinds, Lessee, v. Longworth, is discussed, and the conclusion arrived at is, that "the case in fact has no bearing whatever on the validity of voluntary conveyances in point of law as against 'previous creditors.'"

We now propose to notice separately some of the charges given to the jury, to show that other cardinal principles of the law were violated by the court on the trial below.

We would call especial attention to the instructions. The fourth charge is, in substance, that "if the deeds of gift were made bona fide," then "no subsequent misconduct on the part of the grantor could affect or invalidate them." This view of the law subordinates the claims of existing creditors, to those of the children of the grantor. Its direct tendency was to lead the jury into the grave error that Charles Anderson had the right to give away his property to his children, and that, unless he did it with actual intent at the time to defraud his creditors, then his putting such property as he reserved in such a shape that his creditors could not reach it by law, would not authorize his existing

creditors to subject the property he had voluntarily conveyed away. It is a sufficient answer to this view, to quote the well-settled maxims of the law, that "the claims of justice are superior to those of affection;" and that a man "must be just before the law permits him to be generous."

The sixth charge was in effect, that, "if the deed of gift to the land in contest was made in good faith, then the lands were not liable to seizure and sale under an execution on a judgment for a pre-existing debt of the grantor; and such seizure and sale could confer no title on any purchaser." If this be a correct statement of the law, then a parent may give to his children the bulk of his estate, retaining only a small portion, and require the creditors to look exclusively to the small portion retained, and not the whole estate, on faith of which the credit was given. More than this, if by misfortune, accident, fraudulent concealment, or otherwise, the parent should lose, or make way with, the portion retained, then the pre-existing creditors would forever lose their debts, though the property, on faith of which credit was given, remained in the hands of children who parted with nothing to obtain it. The direct effect would, under the most favorable circumstances, be to require the creditor to take the entire risk of the future solvency and good faith of the parent, rather than the children who were mere recipients of his bounty, and to look to a part, and perhaps a very small part, rather than the whole estate on faith of which credit was given, for the satisfaction of their debts. This reverses the natural order of things, and is repugnant alike to justice, reason and common sense.

The eighth charge was, that "if the deed of gift in this case was duly recorded, and Wilson claims title as purchaser directly from John R. Anderson, then he stands in Anderson's shoes in all respects, and this suit is to be regarded as brought against Anderson himself." We submit, that when this charge is taken in connection with the seventh charge, which attempts to fix actual fraud on John R. Anderson, in procuring the land in contest to be levied on, in order to

purchase it, and thus defeat the title of the infant remainder-man, it is erroneous.    There is not a particle of evidence in the record even tending to show that Wilson, the plaintiff in error, had notice, either actual or constructive, of any fraud or misconduct of Anderson, in having the land levied on and sold.    The record of the deeds was only notice of the chain or derivation of title, not of the fraudulent acts, if any there were, of the vendor, in procuring the title.    He stands before this court as a *bona fide* purchaser for a full consideration, without notice of any fraud or misconduct of his vendor, if any there was, and he is entitled to all the rights, privileges and protection of such a purchaser.    The record showed that his vendor had purchased the land in contest, at sheriff's sale, and such titles are highly favored in law, and from well-settled principles of public policy will not be disturbed except under peculiar circumstances. Minor v. City of Natchez, 4 Smedes & Marsh. 602.    The deed from Charles Anderson to John R. Anderson showed on its face that it was without valuable consideration, and was founded solely on love and affection.    Of this, and of the record and proceedings on which the judgment for the pre-existing debt of Charles Anderson was founded, Wilson had notice, and he was doubtless satisfied that the sheriff's sale and conveyance vested a clear title in his vendor.    Even if his vendor had been guilty of a fraud in obtaining the levy to be made, it cannot affect the plaintiff in error, unless notice of the fraud be brought home to him.    There is no such evidence in the record.    In the absence of such evidence, the eighth charge was manifestly erroneous.

The ninth charge, given at the instance of the plaintiff below, we regard as more objectionable, if possible, than any of the charges given, and more calculated to mislead the jury. It starts out by asserting that, "by a statute of this state, it is unlawful for any tenant for life to buy in the inheritance, as against the remainder-man, so as to defeat or in anywise affect the remainder," and then proceeds to state that, if the

deed of gift was executed in good faith, was duly recorded and was accepted by John R. Anderson as tenant for life, with remainder over as therein expressed, then his purchase of the land at sheriff's sale vested no title in fee simple, either in himself or in Wilson as subsequent purchaser, as against the plaintiff below.    This instruction rendered it impossible for the jury, whatever view they may have entertained of the facts of the case, to find otherwise than for the plaintiff; and yet this instruction contains a palpable misconstruction of the law.    Neither its language or its legal effect are properly stated in the instruction.    The exact words of the statute are: "Nor shall the union of such particular estate with the inheritance by purchase, or by descent, so operate, by merger or otherwise, as to defeat, impair, or in any other way affect, such remainder."    The statute to which it refers has no conceivable application to the case in hand.    It was enacted to meet that class of cases in which, by the common law, the alienation of the particular estate, or its union with the inheritance, worked the destruction of the contingent remainder, which depended on it.    At common law, the union of the inheritance with the particular estate, either by purchase or by descent, operated by way of merger, and destroyed the intermediate contingent remainder.    This was the evil the statute was designed to remedy.    It was designed to meet cases in which the tenant for life succeeded to the inheritance, or purchased it; and by thus changing the quantity and quality of his estate destroyed intermediate contingent remainders.    At common law, it was in the power of the tenant for life, by obtaining the inheritance by purchase or otherwise from a third party, to defeat an intermediate remainder.    Here there was no intermediate remainder, and hence such a case is not within the evils our statute was designed to remedy.    Here the remainder was a remainder in fee, and was itself the inheritance.    Here the life estate and the remainder in fee were both destroyed by reason of the nullity of the voluntary deed creating them.    The statute supposes a case in which the

life estate is destroyed by merger. Here the life estate, instead of being merged, perishes in a common calamity with the remainder in fee. Is it to be supposed that the statute meant, in a case where, by reason of the nullity of the deed creating the successive interests, the whole fee is subjected to sale, that, though every other man living may purchase at the sale, the defeated life tenant may not. Such a conclusion would be preposterous. The sheriff did not levy on the remainder, or on the particular estate, as such. He levied on and sold the entire estate as it existed in Charles Anderson at and before the date of the deed of gift. The sale made by him worked the absolute destruction of both the life estate of Jno. R. Anderson and the remainder of Kohlheim.

The doctrine that the tenant for life shall not purchase in the inheritance for his own benefit, and is held to be a trustee for those in remainder, is a doctrine of the courts of chancery, which proceeds on the supposition that the tenant for life holds the legal title at law. Besides, it will be found on tracing out the doctrine, that it had its origin in the case of Keech v. Sanford (2 Eq. Cases Abridged, 741), commonly known as the Rumford Market case, where a trustee renewed a lease in his own name, and was gradually expanded so as to cover all cases where, by means of his possession and some privilege attached to it, the tenant for life had an advantage over every competitor at the sale. Randall v. Russell, 3 Merivale; 1 Lead. Cas. in Eq. side page 32 and note; 1 Lead. Cas. in Eq. 85. It has no application whatever to a case like the one now before the court, where the life interest as well as the inheritance are sold together by a creditor, as to whom the conveyance creating the division of the fee into life estate and remainder is treated as a nullity.

The debt here was not an incumbrance on the fee, as a mortgage or charge made by the grantor or devisor, with his disposition by will or otherwise subject to the mortgage. In this class of cases the mortgage or charge is on the

estate, and is a modification, *pro rata*, of all interests. In the case before us the entire estate, and not a particular interest in it, was liable to be sold, and was actually sold ; and the tenant for life had no advantage by his possession over any other purchaser ; for the sheriff's sale worked the entire destruction of his life estate, as well as of the remainder.

So there was nothing either in our statute or in the doctrine of the courts of equity to prevent John R. Anderson from purchasing the land at the sheriff's sale. The purchase and deed from the sheriff certainly vested in him the legal title in fee simple to the land in contest.

Taking the most favorable view that is possible to be taken for the defendant in error, and admitting that the debt due the Mobile and Ohio Railroad Company was only a charge in the nature of a mortgage on the estate, which it was equally the duty of the tenant for life and the remainder-man to keep down or discharge, then the sale and conveyance by the sheriff of the entire estate would have vested the legal title in John R. Anderson, and all that Kohlheim could have claimed would be a right in equity to pay his *pro rata* toward redeeming the estate. He would have, at most, even on this supposition, an equitable title, and a right to enforce his claim in a court of equity, but certainly not such a title as he could recover on in an action of ejectment. The title of Anderson, derived from the sheriff, is certainly not void. At most, it is only voidable, and vests the legal estate in Anderson and his vendee, until it is adjudged by a competent court to be void. No such adjudication has been made. It necessarily follows that Kohlheim had not the legal title, and, consequently, could not maintain an action of ejectment. The most that he could do, under any circumstances, would be to file a bill in chancery to redeem the land and have the legal title of Wilson canceled. If he has any remedy at all, it is in equity and not at law.

*Sale & Dowd*, for defendant in error,

Filed an elaborate argument in writing, too long for inser-

tion and too complete in its entirety to allow of its being marred by an attempt at abbreviation, devoted to sustaining the construction of the statute of frauds, which was announced by the court in the opinion in this case.

PEYTON, C. J.:

It appears from the record in this case, that Charles Anderson, Sr., a citizen of Pontotoc county, was seized and possessed of an estate real and personal, of the value of more than $200,000, and being about seventy years of age and desirous of settling the greater portion of said estate upon his children in his life-time, to avoid an administration thereof, after his death, in the probate court, he conveyed by deeds of gift, which were duly acknowledged and recorded, all his said estate to his children, except property to the value of about $30,000, which he reserved for himself and wife, who was about his age. That on the 31st day of March, 1865, for the consideration of natural love and affection, he conveyed to his son, John R. Anderson, a certain tract of land, for and during the term of his natural life, and at his death to his child or children, if he leave any surviving him, and if he die, leaving no surviving child, then to the children of his daughter, Ann D. Kohlheim, their heirs and assigns forever. The said John R. Anderson accepted the deed of gift, and took possession of the land thereby conveyed, and on the 13th of August, 1867, departed this life, leaving no child surviving him; and that at the time of his death, Charles F. Kohlheim was and now is the only surviving child of the said Ann D. Kohlheim, the daughter of Charles Anderson, Sr., named in said deed of gift.

That on the 18th of October, 1855, the Mobile and Ohio Railroad Company obtained judgment against the said Charles Anderson, Sr., for the sum of $782 50, for a debt due at the date of said deed of gift, on his subscription for stock in said company. Under this judgment the land conveyed by said deed of gift was sold by the sheriff to the said

John R. Anderson, who conveyed the same to James K. Wilson.

The said Charles F. Kohlheim brought an action of ejectment in the circuit court of Lee county, in 1869, against Ewing Gill to recover the tract of land of about three hundred and twenty acres, situated in said county, which was conveyed by deed of gift as aforesaid, Wilson having leased the land to said Gill, was admitted to defend as landlord, and joined in the plea of not guilty.

It was admitted at the trial of this cause that, at the date of said deed of gift, of March 31, 1854, the grantor, Charles Anderson, Sr., owed no other debt than that to said railroad company, except, perhaps, a trifling amount for current expenses ; that he was very wealthy, owning lands, negro slaves and other property in this state, and chiefly in Pontotoc county, of the value of more than $200,000 ; that an *alias* execution, issued on said judgment, was first levied upon three quarter sections of land conveyed by said donor, in fee simple, to his son, William A. Anderson, and upon five quarter sections of land, given and conveyed by him in fee, to his son Charles W. Anderson, in all about twelve hundred and eighty acres, worth about $10,000.  And, at the instance of John R. Anderson, the land in contest was added to the levy, with the assent of the donor, in order that the said John R. Anderson might purchase the same at the sheriff's sale, and thus get the fee simple title in himself, and thereby defeat the interest in remainder of the children of Ann D. Kohlheim ; that at the sheriff's sale, the land in dispute, which had been added to the levy as aforesaid, was first exposed to sale and bid off by the said John R. Anderson at $600, which was then worth $2,000, and the same was conveyed to him by the sheriff, and the balance due on the judgment was paid without a sale of any other property.  Evidence was adduced of the rents and profits of the land in controversy, and the jury, upon the proofs, found the issue for

the plaintiff, and assessed his damages by way of mean profits at $2,000.

The defendants then moved for a new trial, which motion was overruled by the court, and the defendants filed their bill of exceptions, whereupon the court rendered judgment upon the verdict for the plaintiff against the defendants, who bring the case to this court by writ of error.

The plaintiff in error makes the following assignments of error : 1st. That the court refused to permit witness Kohlheim to answer the following question : " Was not your son, the plaintiff, aware of the sale, and if he was then, though a minor, a precocious lad, and capable of understanding business, and of attending to and protecting his own interest ?" 2d. That the court erred in giving to the jury all the charges asked by the plaintiff, to the number of nine, inclusive. 3d. That the court erred in refusing to give to the jury the first five charges asked by the defendant. 4th. That the court erred in modifying the sixth charge asked by the defendant, by inserting the words " and was made to defraud creditors."

We think the charges given for the plaintiff below were proper, except the third and ninth. The third charge was not applicable to facts of the case, and was a mere abstract proposition of law, and ought not to have been given. The ninth charge is still more objectionable. There can be no doubt of the right of the tenant for life to purchase the inheritance where there is no intermediate estate. This right existed at the common law, but, by the common law, the intermediate contingent remainders would be destroyed by the purchase of the inheritance, and to prevent this, the statute upon which this charge is based, was enacted. There were, in this case, no intermediate contingent estates to be destroyed by the union and coalition of the inheritance and the life estate. The evil intended to be remedied by the statute could not occur in this case, for the reason that there was no intermediate contingent interest that could be affected by the

purchase of the inheritance by the tenant for life ; the charge was, therefore, erroneous.

We can perceive no error in the refusal of the court to give the first five charges asked by the defendant. And with regard to the fourth assignment, which impeaches the right of the court to modify the instructions asked by either party to a suit, we think it is not well taken. There can be no doubt of the right of the court to modify the instructions asked to be given to the jury. It is not only the right but the duty of the court to inform the jury of the law of the case, when requested to do so by the parties, or either of them. Nor is the judge confined to granting or refusing instructions to the language in which they are propounded to him. If they do not as presented to him fairly and concisely declare the law, on all the points embraced in them, he should so modify them as to communicate to the jury his view of it.

The main question presented by this record for our determination is : "Is a voluntary conveyance of property, by a father to his son in consideration of love and affection, fraudulent and void *per se* as to existing creditors ?"

Our statute to prevent frauds and perjuries has embodied, substantially, the provisions of the English statutes of the 13th and 27th Elizabeth, on this subject. And it must be conceded that, in the construction of these statutes, both in England and America, there has been considerable oscillation of judicial opinion, which, if we are to judge from modern adjudications, is believed to be settling down to a more benign and liberal construction of those statutes, on both sides of the Atlantic, that was formerly given to them. The first of the above-named statutes was intended for the protection of creditors, and the latter for the protection of purchasers.

The case of Bogard v. Gardling, 4 Smedes & Marsh. 310, is believed to be the only case in which the court of the last resort in this state has directly decided that a gift by a parent to a child cannot be sustained against a prior credi-

tor.   This decision was based upon the case of O'Daniel v.
Crawford, in 4 Dev. 197, the facts of which are these : On
the 11th of April, 1809, Henry O'Daniel, in consideration
of love and affection, conveyed the land in dispute to seve-
ral of his children, reserving a life estate to himself in the
land.    At the time of the conveyance the grantor owed
three or four hundred dollars, and, in 1822, he contracted
another small debt.    In addition to the life estate in the land,
he was possessed of personal property of the value of five or
six hundred dollars.    A majority of the supreme court of
North Carolina, following the case of Reade v. Livingston,
3 Johns. Ch. 481, and the old English cases therein cited,
decided that the conveyance was fraudulent in respect to
existing debts, by presumption of law, without regard to
the amount of the debts, the extent of the property con-
veyed, or the circumstances of the party.    The authority
of this case is very much weakened by the dissenting opin-
ion of Judge Daniel, who said :   " O'Daniel was possessed
of personal property to the value of five or six hundred
dollars at the time of the conveyance, and reserved to him-
self a life estate in the land ; he owed two small debts, and
must we say, from these facts, that he made the conveyance
for the intent to hinder and delay these two creditors.
Policy may call for such a decision, but I cannot bring my
mind to believe it is within the statute."    The doctrine of
this case has since been much modified by subsequent decis-
ions of the same court, as will appear by reference to the
cases of Jones v. Young, 1 Dev. & Bat. 352 ; Arnett v.
Wanett, 6 Ired. 41 ; and Smith v. Reavis, 7 ib. 343.    In the
last cited case the court say, "that it has always been held
necessary to show that the maker of the deed was indebted
at the time, or so soon afterward as to connect the purpose
of making the deed with that of contracting the debt and
defeating it ; and when the donor's indebtedness at the time
is spoken of, it is not intended that the deed is void, if he
owed a trifling sum in comparison to his estate, for then no
man could make a deed that would stand ; but, if a father

who conveys to a son be indebted at the time, that does not avoid the deed, provided the father pay the debt, or if he retain property sufficient to pay the debt, and out of which the creditor can raise the money."

A voluntary deed is not void as to creditors when the donor retains sufficient property to pay his debts, and out of which the claims of creditors may be satisfied. 6 Ired. 41. A voluntary conveyance made by a debtor, who owned at the time, and left at his death, sufficient property to pay all the debts which he owed at the time of the conveyance, is not necessarily fraudulent and void as to creditors. The actual intent with which the deed was made must be submitted to the jury. Jones v. Young, 1 Dev. & Bat. 352. These cases seem to sweep away the foundation upon which the case of Bogard v. Gardley rested.

In the case of Swayze v. McCrossin, 13 Smedes & Marsh., the court say : " The debt upon which the judgment was rendered was antecedent to the deed of gift. That deed was voluntary and without pecuniary consideration. It cannot stand as against a creditor whose debt was valid and subsisting at the date of such deed." These were *obiter dicta*. The validity of the deed was not a question necessary to the adjudication of the cause, which was decided on the ground that there was not sufficient proof of identity to warrant the recovery of the land sued for. A judicial tribunal, when referred to a previous decision as an authority respecting the law, looks at the state of the record and the facts of the case, and the subject-matter, before it undertakes to weigh the words used by the judge in pronouncing the opinion, and limits the effect and scope of the words by what thus appears."

In the case of Catchings v. Manlove, 39 Miss. 669, a bill in equity was filed to subject to the payment of the debts of the assignor, the proceeds of a policy of insurance which had been assigned to his wife without any valuable consideration at a time when he was indebted to insolvency. Mr. Justice Handy, in delivering the opinion of the court in this

case, says : " The assignment in this case appears to have been
of a very considerable part of the property of the assignor,
and though a party may lawfully make a gift to his wife or
child, of a reasonable part of his property, if he be not
insolvent at the time or largely indebted, and such gift will
be valid, if made *bona fide* as against subsequent creditors,
yet, if he be insolvent at the time, the gift cannot stand
against the claims of creditors then existing, whether made
with an actual, fraudulent intent as to them or not." And
he cites in support of this doctrine, Salmon v. Bennett, 1
Conn. 525 ; Hind's lessee v. Longworth, 11 Wheat. 199–213,
and 1 Story's Eq. Jur., §§ 356, 357. The logical sequence of
this opinion is, that if the grantor be not insolvent or largely
indebted at the time of the gift, but retain in his hands and
possession property liable to pay his debts and amply suffi-
cient for that purpose, the voluntary conveyance would not
be fraudulent *per se* and void as to existing creditors. And
this is in accordance with reason, justice and the current of
modern adjudications upon this subject, both in England
and America, and especially in this country. Our courts lay
down the reasonable doctrine, that a conveyance to a child,
by a parent who was indebted at the time, is presumptive
evidence of fraud ; but this presumption may be rebutted by
showing that the parent was in prosperous circumstances
and not embarrassed ; that his debts were small, and suffi-
cient property was retained to pay them, and that the gift
was no more than a reasonable provision for the child.
Walker's Am. Law, 429. In the case of Holloway v. Mil-
lard, 1 Mad. Ch. 417, it was decided, that a voluntary con-
veyance is *prima facie* evidence, where the party is loaded
with debts at the time, of an intent to defeat and defraud his
creditors. It is undoubtedly the law that, if the party be
insolvent at the time of making a voluntary conveyance, it
is void as to existing creditors. And a large indebtedness
at the time, as compared with the resources and property of
the party making a voluntary conveyance, is, *prima facie*,
evidence of a fraudulent intent.

In the case of Lerow v. Wilmarth, 9 Allen, 386, the court repudiates the doctrine, that a voluntary conveyance by a father for the benefit of his child is, *per se*, fraudulent as to existing creditors, although shown not to have been fraudulent in fact, and is liable to be set aside, because the law conclusively presumes it to have been fraudulent, and shuts out all evidence to repel such presumption. And it is laid down as the better doctrine, that there is, as applicable to voluntary conveyances, made on a meritorious consideration, as blood and affection, no absolute presumption of fraud, which entirely disregards the intent and purpose of the conveyance, if the grantor happens to be indebted at the time it was made ; but that such a conveyance, under such circumstances, affords only *prima facie* or presumptive evidence of fraud, which may be rebutted and controlled. Such seems to have been the rule as established by the right and force of reasoning in the text-writers, and best considered cases in this conntry.

In New Hampshire it has been held, that a voluntary conveyance, for the consideration of natural love and affection, made by a person not embarrassed at the time, but retaining ample means to pay all his existing creditors is good, unless it be made to appear that such conveyance was not *bona fide ;* and whether it was *bona fide* or not is a question of fact depending upon all the circumstances of the case, such as the reasonableness of the provision, the extent of the indebtedness, the nature and sufficiency of the fund retained to satisfy such debts, and other circumstances bearing upon the motives of the conveyance. Pomeroy v. Bailey, 43 N. H.

The supreme court of Tennessee have decided that an indebtedness which bears an inconsiderable proportion in amount to the property reserved, does not, of itself, render a voluntary conveyance void. If the property retained be entirely ample to pay all demands, the gift is good. It cannot be presumed in such a case, from the fact of indebtedness alone, that the object was to defeat creditors

of their just demands. Turkey v. Self, 4 Sneed, 124. It is a great mistake to suppose that the statute makes void, as against creditors, all voluntary conveyances. The courts, in construing the statute, have held it to include deeds made without consideration as being *prima facie* fraudulent, because necessarily tending to delay creditors. But the question in each case is, whether the deed is fraudulent or not, and to rebut the presumption of fraud, the party is surely at liberty to give in evidence all the circumstances of the transaction. A deed made in consideration of natural love and affection only, is not necessarily void as to existing creditors, although it may be made so by evidence.

In Maryland, it is held that a *bona fide* conveyance, founded upon a good consideration, is not void *per se*, though the grantor may be indebted at the time. The mere fact of being indebted at the time does not, of itself, constitute a substantive ground to avoid a voluntary conveyance for fraud ; the question, whether fraudulent or not, is to be solved by taking into consideration all the circumstances of the case, and not alone from the mere fact of indebtment at the time. Atkinson v. Phillips, 1 Mad. Ch. 510.

Chancellor Bland says : "It is laying down the rule much too large to say, on the one hand, that all voluntary conveyances are void if the grantor be at all indebted at the time ; and, on the other, that they are good if he be not at the time actually insolvent. The true rule by which the fraudulency or fairness of a voluntary conveyance is to be ascertained, in this respect, is founded on a comparative indebtedness, or, in other words, on the pecuniary ability of the grantor at the time to withdraw the amount of the donation from his estate, without the least hazard to his creditors, or in any material degree lessening their prospects of payment." Kipp v. Hanna, 2 Bland. 33. And this is the doctrine of the courts of Pennsylvania. Posten v. Posten, 4 Whar. 40 ; Chambers v. Spencer, 5 Watts, 410 ; and Miller v. Pearce, 6 Watts & Serg. 101.

In New York it is held, that if a person making a settle-

ment is insolvent, or in doubtful circumstances, the settlement comes within the statute of 13th Elizabeth, ch. 5. But if the grantor be not indebted to such a degree as that the settlement will deprive the creditors of an ample fund for the payment of their debts, the consideration of natural love and affection will support the deed, although a voluntary one, against creditors, for, in the language of the decisions, "it is free from the imputation of fraud." Verplank v. Story, 12 Johns. 536, 559 ; and Seward v. Jackson, 8 Cow. 406, 438.

In Vermont, it was held, that where one in prosperous circumstances, and not much embarrassed with debts, in consideration of natural love and affection, made a voluntary conveyance to his daughter of a portion of his estate, leaving means amply sufficient to pay all he owed, such conveyance was good and valid as to an existing creditor. Bracket v. Waite, 4 Vt. 398.

In Arkansas, the courts hold, that a voluntary conveyance by a parent to a child is not fraudulent *per se* as against existing creditors, and when made in good faith by way of advancement, and abundant property at the time of the conveyance is retained by the parent to pay all his debts, it is good against existing as well as subsequent creditors, even though the property retained should afterward so depreciated in value as to be insufficient to pay all the exist ing debts. Dodd v. McGraw, 3 Eng. 93, and Smith v. Yell, ib. 470. And the same doctrine is maintained in Michigan, where it is held, that a voluntary conveyance by a father to his child is not *per se* fraudulent as to existing creditors, when made in good faith by way of advancement, and abundant means are retained by the father for the payment of his debts, the conveyance, though voluntary, is good against existing as well as subsequent creditors. Walker's Ch. 438.

In the case of Worthington v. Shipley, 5 Gill, 449, the court of appeals of Maryland say : "We consider it as now well established, at least by a decided preponderance

of authority, and upon principles alone consistent with a just and rational interpretation of the statute, that an indebtment at the time of a voluntary conveyance, is *prima facie* only, and not conclusive evidence of a fraudulent purpose, even with respect to a prior creditor ; and that this presumption may be repelled by showing that the grantor or donor at the time of the gift was in prosperous circumstances, possessed· of ample means to discharge all his pecuniary obligations, and that the settlement upon the child was a reasonable provision, according to his or her station and condition in life." Testing the voluntary conveyance in the 'case under consideration, by the rule thus announced, there can be no doubt that it must be pronounced good and valid. The question with respect to the true construction of the statute of 13th Elizabeth, ch. 5, was considered by Lord Langdale in 1840, as master of the rolls, in Townsend v. Westacott, 3 Beav. 345, he said : "There can be a little exaggeration' in the argument on both sides as to the principle on which the court acts in such cases as these ; on the one side it has been assumed that the existence of any debts at the time of the execution of the deed would be such evidence of a fraudulent intent as to induce the court to set aside a voluntary conveyance, and oblige the court to do so under the statute of Elizabeth, I cannot think the real and just construction of the statute warrants that proposition, because there is scarcely any man who can avoid being in debt to some amount ; he may intend to pay every debt as soon as it is contracted, and, consequently, use his best endeavors, and have ample means to do so, and yet may be frequently, if not always, indebted in some small sum ; there may be a withholding of claims, contrary to his intention, by which he is kept in debt in spite of himself ; it would be idle to allege this as the least foundation for assuming fraud or any bad intention ; on the other hand, it is said that something amounting to insolvency must be proved to set aside a voluntary conveyance ; this too is inconsistent with the principle of the act, and with the

judgments of the most eminent judges." And the same doctrine is maintained by the court of exchequer in the case of Gale v. Williamson, 8 Mees. & Wels. 409. In the case of Cadogan v. Kennett, Cowp. 434, Lord Mansfield said: "The statute of 13th Elizabeth, ch. 5, which relates to frauds against creditors, directs, that no act whatever, done to defraud a creditor, shall be of any effect against such creditor or creditors;" but then, such construction is not to be made in support of creditors as will make third persons sufferers. Therefore, the statute does not militate against any transaction *bona fide*, and where there is no imagination of fraud. And so is the common law." And in the case of Doe v. Routledge, Cowp. 710, the same judge says: "A custom has prevailed, and leaned extremely, to consider voluntary settlements fraudulent against creditors. But if the circumstances of the transaction show it was not fraudulent at the time, it is not within the meaning of the statute, though no money was paid. One great circumstance, which should always be attended to in these transactions, is, whether the person was indebted at the time he made the settlements. If he was, it is a strong badge of fraud."

The impression made by these declarations of Lord Mansfield is, that every gift, made by a person indebted at the time, is liable to great and serious objection, and is, to use his own expression, a strong badge of fraud, but it is not, necessarily, and under all possible circumstances, absolutely fraudulent. We take the correct rule upon this subject to be, that where a parent is in prosperous and unembarrassed circumstances, and makes advancements to his children, adapted to their wants and justified by his means, leaving ample funds for the payment of all his just debts, there can be no propriety in treating his conduct as fraudulent in behalf of creditors. While the indebtedness of the grantor, at the time of a voluntary settlement or conveyance, may be regarded as raising a presumption against its validity, that presumption is only *prima facie*, and not conclusive. It is liable to be repelled by the particular circum-

stances of the case. And this principle is announced by the court of appeals of Kentucky, in the case of Trimble v. Radcliff, 9 B. Monr. 514, in which the court say : "We do not suppose that the principle which requires every man to be just before he is generous, or that the requisition of good faith toward his creditors, as imposed either by statute or the principles of justice and morality, is violated by a gift from a father to his child, suitable to the condition of each, which is neither intended, nor upon any reasonable estimate can be expected, to operate to the injury or hinderance of any existing creditor or of any contemplated liability."

It was held, in the case of Salmon v. Bennett, 1 Conn. 525, that, where there is no actual, fraudulent intent, and a voluntary conveyance is made to a child in consideration of love and affection, if the grantor is in prosperous circumstances, unembarrassed, and not considerably in debt, and the gift is a reasonable provision for the child, according to his state and condition in life, leaving ample funds unincumbered for the payment of the grantor's debts, then such conveyance will be valid against creditors existing at the time. For if all gifts to children, by men in affluent and prosperous circumstances, were to be rendered void upon a reverse of fortune, it would involve children in the ruin of their parents, and, in many cases, might produce greater evil than that intended to be remedied. Nor will all such conveyances be valid ; for then it would be in the power of parents to provide for their children at the expense of their creditors. The character of the transaction must be collected from the circumstances of the case. This is a leading case in this country, and gives a construction to the statute which is in accordance with the doctrine upon this subject, as it is now established by an almost unbroken series of modern decisions in England and the United States.

In the case of Hinds, Lessee, v. Longworth, 11 Wheat. 213, the supreme court of the United States held, that a

deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors. It may be so under certain circumstances, but the mere fact of being in debt to a small amount would not make the deed fraudulent, if it could be shown that the grantor was in prosperous circumstances and unembarrassed, and that the gift to the child was a reasonable provision according to his state and condition in life, and leaving enough for the payment of the debts of the grantor. The want of a valuable consideration may be a badge of fraud, but is only presumptive, and not conclusive evidence of it and may be met and rebutted by evidence on the other side.

It will thus be seen that the mere fact of indebtment at the time does not, *per se*, constitute a substantive ground to avoid a voluntary conveyance for fraud, even in regard to prior creditors. The question, whether it is fraudulent or not is to be ascertained, not from the mere fact of indebtment at the time alone, but from all the circumstances of the case. And if the circumstances do not establish fraud, then the voluntary conveyance is deemed to be above all exception. 1 Story's Eq. Jur. 358, § 362; Bank of the United States v. Housman, 6 Paige, 526, and Abbe v. Newton, 19 Conn. 27. It may be laid down as a general proposition, that if such conveyance be made to any person other than a child, it will be void as to existing creditors, and when made to a child, or as a settlement upon a wife, whether it shall be void or not depends upon the condition of the grantor as to his ability to pay his debts out of his remaining property at the time of its being made. 3 Washb. on Real Prop. 297 (3d ed.) ; Newland on Contracts, 384, 385 ; Toulmin v. Buchanan, 1 Stew. 67 ; Howard v. Williams, 1 Bailey, 575 ; McElwee v. Suton, 2 ib. 128.

Chancellor Kent, in the second volume of his commentaries, 442, in a note, seems to concede that the old doctrine of Reade v. Livingston is too strict for the present age. He says of Mr. Justice Story : "This learned commentator has examined the authorities on the question very

critically, and he comes to the conclusion that the doctrine in the case of Reade v. Livingston is *strictissimi juris ;* and he evidently settles down upon the conclusion under the statute of 13th Elizabeth, that mere indebtedness at the time would not, *per se,* establish that a voluntary conveyance was void, even as to existing creditors, unless the other circumstances of the case justly created a presumption of fraud, actual or constructive, from the condition, state and rank of the parties, and the direct tendency of the conveyance to impair the rights of creditors. I have no doubt that this is the tendency of the decisions both in England and America, and that the conclusions of fraud are to be left as matters of fact to a common jury. The doctrine in Reade v. Livingston, and of those English chancellors on whom it rested, is, as I greatly fear, too stern for the present times."

Upon a full and patient investigation of this case, we have arrived at the conclusion that the deed of gift in this case was not fraudulent and void as to the creditors of the grantor, and that John R. Anderson acquired no title to the land in controversy by his purchase at the sheriff's sale, and the plaintiff in error, by his purchase from him, obtained only the life estate, limited to his vendor by the deed of gift.

Although the third and ninth charges given for the defendant in error are wrong, yet, as the verdict is right, we are not disposed to disturb it.

*The judgment is affirmed.*