ANNIE H. EDMUNDS, BY NEXT FRIEND, v. M. K. MISTER ET AL.

58  765
76  197
58  765
79  358
58  765
93  821

1. INFANT. *Goods sold to. When presumed not necessaries.*
   Where goods are sold to an infant having a guardian, the law presumes, in the absence of proof, that they are not "necessaries," nor furnished under such circumstances as that their reception, of itself, imposes a legal liability upon him.

2. SAME. *Executory contract. Ratification.*

The executory contract of an infant for the payment of money, not for necessaries, imposes no legal liability upon him. It furnishes a sufficient consideration to support a valid contract, and if it be ratified by the infant after the attainment of his majority, it becomes binding. But such ratification must possess all of the elements necessary to a new contract, except the consideration. A mere acknowledgment of the debt is not sufficient, but there must be an express promise to pay, voluntarily made. Such is the common-law rule, without reference to the statutory provision requiring a new promise or ratification to be in writing.

3. SAME. *Voluntary conveyance, When not fraudulent as to creditors.*

A voluntary conveyance of land, made by one who has just attained his majority, cannot be attacked as fraudulent by creditors for goods sold to the grantor during his minority, where the goods were not necessaries, and the contract to pay for them has not been legally ratified by the buyer after becoming of age.

4. SAME. *Voluntary conveyance. Judgment against grantor. Contest as to title.*

In a contest between the grantee in a voluntary conveyance of land, made by one who has just attained his majority, and the purchaser under judgments against the grantor, the purchaser's title will prevail if he can show that the judgments embraced, in whole or in part, debts created after the attainment of his majority by the debtor and before the date of the conveyance, or debts in whole or in part for necessaries furnished during the minority of the debtor, under circumstances which imposed a legal liability upon him. But in such case the burden of proof rests upon the purchaser.

5. SAME. *Distinction between executed and executory contracts.*

The distinction between executed and executory contracts of infants is, that the former must be disaffirmed or they will become obligatory, while the latter must be affirmed or they will be null.

6. SAME. *Voluntary conveyance. Subsequent judgments. Title.*

A voluntary conveyance of land is not affected by judgments subsequently recovered against the grantor upon debts contracted before the conveyance, but during his infancy, for goods not necessaries, and which had not been ratified after the attainment of his majority, otherwise than by a failure to plead to the actions thereon.

7. FRAUDULENT CONVEYANCE. *Purpose expressed. Presumption excluded.*

A voluntary conveyance made by a debtor for the avowed purpose of preventing his creditors from subjecting the land conveyed to his valid debts, cannot be upheld by showing that the grantor retained other property sufficient to meet his liabilities.

8. SAME. *Retention of other property by grantor. Presumption of law.*

The presumption of law that a voluntary conveyance of land by a debtor is fraudulent as to creditors holding valid debts against him, cannot be rebutted by showing a retention of a reversion of the land in the grantor, where all of his visible tangible property is nominally conveyed for the life of the grantee in the deed, but the grantor is left in the possession and enjoyment of the

same; nor by showing the retention by the grantor of other property, unless it is undoubtedly sufficient to pay all of his debts, and is plainly accessible to the creditors.

9. SUPREME COURT.  *Practice.   Rule as to reëstablishing verdict.*

Upon an appeal to this court in a case where there have been two    , if the judgment is reversed this court will reëstablish the first verdict, if it, being in favor of the appellant, was erroneously set aside by the court below, and was right upon the facts in evidence before the jury; but if it was not warranted by the proof before the jury it will not be reëstablished, although the court below may have improperly excluded from the jury evidence which, if unrefuted, would have authorized the verdict.

APPEAL from the Circuit Court of Grenada County.

Hon. SAMUEL POWELL, Judge.

The case is stated in the opinion of the court.

*Fitz-Gerald & Whitfield,* for the appellant.

The debts of a minor, not for necessaries, are not legal debts at all.  *Smith* v. *Mayo,* 9 Mass. 62; *Allen* v. *Poole,* 54 Miss. 331.

Was the deed made by Edmunds to his daughter, the appellant, for the express purpose of disaffirming his minority debts (debts not for necessaries), a sufficient disaffirmance? He made the deed for that identical purpose, in lieu of pleading minority, and as a mode of asserting the privilege of minority. "Any act unequivocally manifesting an intention to avoid," avoids all contracts, real or personal, made by a minor.   1 Am. Ld. Cas. 317, 318, and note 4, and cases cited; 43 N. H. 414; 34 N. H. 67; *Allen* v. *Poole,* 54 Miss. 330; *Tucker* v. *Moreland,* 10 Pet. 58; *Mustard* v. *Wohlford,* 15 Gratt. 329; *Price* v. *Furman,* 27 Vt. 268; *Vent* v. *Osgood,* 19 Pick. 572; *Whitmarsh* v. *Hall,* 3 Denio, 375; *Moses* v. *Stevens,* 2 Pick. 322; *Dallas* v. *Hollingsworth,* 3 Ind. 537; *Walker* v. *Ellis,* 12 Ill. 470; *Skinner* v. *Maxwell,* 66 N. C. 47; Tyler on Inf. & Cov. 31, 55, 70; 1 Pars. on Con. 322.

It is only necessary to an avoidance that the act avoiding should be inconsistent with that avoided.   "It is not necessary, in order to produce that effect, that the latter act should expressly disaffirm the former.   If the two acts be inconsistent with each other, the former is disaffirmed by plain and neces-

sary implication." Tyler on Inf. & Cov. 70 ; *Kline* v. *Beebe*, 6 Conn. 498 ; *Jackson* v. *Carpenter*, 11 Johns. 539 ; *Jackson* v. *Burchin*, 14 Johns. 125 ; *Chapin* v. *Shafer*, 49 N. Y. 412 ; *The State* v. *Plaisted*, 43 N. H. 413 ; *Williams* v. *Norris*, 2 Litt. 157 ; *Derrick* v. *Kennedy*, 4 Port. 41 ; *Phillips* v. *Green*, 13 Am. Dec. 132.

The court improperly excluded the testimony of Edmunds, to the effect that at the time the debts for which the land in controversy was sold were contracted, he was an infant. The court proceeded upon the idea that his daughter, the plaintiff, could not set up his infancy in this suit because Edmunds did not plead it in the actions against him. The appellant's position is that the minority of her father had been by her father himself, and for himself, pleaded or asserted by the deed of the 19th of March, 1860, and that in consequence of her father having thus disaffirmed these debts, her rights vested by the deed, and having once vested, could never thereafter be affected by any action whatever of her father. The question here is, not who can plead minority, but, the minor himself having disaffirmed his minority debts after becoming of age, what are the benefits resulting from his action to others?

But we contend for the appellant that, leaving her father's minority out of the case absolutely, and treating him as if he had been an adult when the minority debts were contracted, her title is unassailable, because there were only $2,012.97 of debts of all kinds, minority and adult, existing against him at the date of the conveyance to her, and he left out of the deed and exposed to his creditors over $36,000 worth of property, besides the reversionary interest in fifteen town-lots in the city of Grenada ; and all of the property not embraced in the deed was as accessible to creditors as that which was conveyed, and was abundantly sufficient to pay all of the debts. But, classing creditors who got judgments respectively upon indebtedness contracted partly before and partly after the 19th of March, 1860, without discrimination as to the two kinds of indebtedness, as subsequent creditors, as they must be classed,

we find that of $2,012.97 of indebtedness contracted before the 19th of March, 1860, only $541.71 can in law be considered as indebtedness prior to the deed, because of such merger in the judgments as to the balance of the indebtedness. As to the law upon this point, see *Usher* v. *Hazeltine*, 5 Greenl. 471; *Gilman* v. *Baker*, 52 Barb. 26; *Miles* v. *Richards*, Walk. 477. A voluntary conveyance which leaves out property of the grantor amply sufficient, in the ordinary course of business, to pay his then existing legal liabilities is valid. There is nothing but a mere presumption against such a deed, and it is overthrown by proof of abundant means left out for existing debts. *Wilson* v. *Kohlheim*, 46 Miss. 351; *Bullitt* v. *Taylor*, 5 Geo. 737; *Howard* v. *Williams*, 21 Am. Dec. 490; 1 Bailey, 575; *Usher* v. *Hazeltine*, 17 Am. Dec. 254; 5 Greenl. 471; *Sexton* v. *Wheaton*, 1 Am. Ld. Cas. 25; *Salmon* v. *Bennett*, 1 Am. Ld. Cas. 35; 14 Am. Dec. 705.

Voluntary conveyances are much more readily sustained where the donee is a child, for whom the property conveyed is a reasonable provision, than where the donee is a stranger. *Salmon* v. *Bennett*, 1 Am. Ld. Cas. 35, 40, and note 1, with authorities cited. See also *Bullitt* v. *Taylor*, 5 Geo. 737; 46 Miss. 373; Bump's Fr. Conv. 302; 8 U. S. Dig. 55; 50 Miss. 39; 3 Washb. on Real Prop. 335, 336; 21 Am. Dec. 490; 14 Am. Dec. 705.

It is well settled that " executory contracts of infants are invalid till ratified; that they require express ratification before they are binding; and that when ratified, no cause of action arises on the contract made during infancy, — there is no vitalizing relation back, — but the action must be brought on the new promise after age." 1 Pars. on Con. 358; *Merriam* v. *Wilkins*, 6 N. H. 432; *Thing* v. *Libbey*, 16 Me. 55; *Thornton* v. *Illingsworth*, 2 Barn. & Cress. 824; *Ford* v. *Phillips*, 1 Pick. 202; *Hall* v. *Gerrish*, 8 N. H. 374; 6 Metc. 487; 43 N. H. 413; Ewell's Ld. Cas. 108, 114; 4 Pick. 48; 12 Conn. 550.

No presumption can arise against this deed from Edmunds'

having remained in possession. The child was but two months old, at the breast. He was bound to remain with, protect, and defend it. The possession of the father, in such cases, has always been held to be the possession of the child. 5 Geo. 646, 717 ; 22 Am. Dec. 490.

We insist that this court should not only reverse the judgment of the court below, but should reinstate the first verdict and enter judgment thereon in this court for the appellant. We understand the rule to be that where the first verdict was right, under the law and the proof, as in this case, and the court below sets it aside and grants a new trial, the court of last resort will disregard everything subsequent to the first trial, reinstate the first verdict, and render the proper judgment for the appellant. *Wood* v. *American Life Ins. and Trust Co.*, 7 How. 609.

*A. H. Whitfield*, of counsel for the appellant, argued the case orally.

*R. H. Golladay*, for the appellees.

The only question in the case, it is believed, is whether the deed of Edmunds to his daughter, the appellant, is valid. The deed was voluntary, the donee a volunteer, the consideration not valuable. It was made to hinder and delay creditors, and not as an advancement. It is urged for the appellant that the debts were contracted in infancy, and that Edmunds, the debtor, might repudiate and disavow such debts ; and that his deed to his daughter was such a repudiation and disavowal. It does not appear whether the debts, on which judgments were rendered, were such as might be repudiated ; whether in whole, or part at least, they were not for necessaries or other considerations that could not be repudiated. But whether so or not, and whether Edmunds could have, or not, interposed his infancy, it is believed that his conveyance did not have that effect, most especially when his expressed purpose was not to avail himself of his infancy, and when, being sued, he did not interpose his infancy. Thus to construe it would be, by inference, to give that effect to his act which he says, and said at

the time, was, and is not, his intention.    Now, it is clear that
infancy is a personal privilege.    The appellant in this case is
not the heir or personal representative.    *Alsworth* v. *Cordtz*,
31 Miss. 32, 36.    When the debtor, Edmunds, had the oppor-
tunity to interpose his infancy he did not do so, but suffered
judgment to be rendered when he was *sui juris.*    He is con-
cluded, and so one in the position of appellant must be con-
cluded.

In the lower court it was attempted to be proved, and insisted
on, that the grantor had sufficient property left, not included
in the deed, to pay his debts.    Accepting *Wilson* v. *Kohlheim,*
46 Miss. 351, as the law in this State, Edmunds' deed is cer-
tainly not protected by the principle adopted in that case.    If
such a deed be protected, when the grantor has, besides, ample
means to pay his existing debts, it is on the idea that the pre-
sumption of bad intention is repelled by the fact that there are
ample means outside of the deed.    But if the intention is con-
clusively shown to be to hinder or delay creditors, it is of no
moment to inquire as to the means or property not embraced
in the deed.

But it is not true that the property of the debtor outside
of the deed was ample to pay debts.    The property not in-
cluded in the deed was of a transient, fugitive character, — as,
cotton just ready to be shipped ; articles worn on the person,
as jewelry or watches ; cattle in the range, not to be found or
known ; a buggy, wagon, carriage, gun, or pistol, — that, like
Burns' " Borealis Race," " flit ere you can point their place."
See *Hunter* v. *Watts*, 3 Gratt. 43 *et seq.*    If, however, the result
is correct, the verdict and judgment will not be disturbed.
This we understand to be the position in this State.    Geo.
Dig. 536, pl. 50.    And it is believed that the second ver-
dict is right.

*R. H. Golladay* also made an oral argument.

CHALMERS, C. J., delivered the opinion of the court.
Robert H. Edmunds, a young man of handsome estate, be-

came of age on the 12th of July, 1859. He was already burdened with debts, contracted by him during minority, amounting to about $2,000, and on the 19th of March, 1860, without having theretofore done anything either in affirmance or in disaffirmance of these debts, he executed and placed on record a deed whereby he conveyed the bulk of his estate, real and personal, to his infant daughter, then two months of age, for and during the term of her natural life, leaving the reversion in himself. He declared at the time that he intended by the act to defeat the holders of claims contracted during his minority, as to the estate conveyed; but that he was unwilling to plead minority, and intended to pay the debts. How he was to pay them does not appear, nor did he then declare, though he now says that he intended to do so out of his wife's estate.

Edmunds continued to become more and more involved, until his total indebtedness finally amounted to more than $9,000. Suits were eventually brought against him by his various creditors, and in these suits no attention seems to have been paid to any distinction between his debts, as to whether they were contracted before or after majority, or before or after the date of the conveyance to the daughter. It is certain, however, that the debts contracted between his arrival at majority and the date of the conveyance (a period of eight months) were trifling. The suits all ripened into judgments, no plea of minority having been interposed in any of them. Under sales made by virtue of these judgments, defendants have held the lands now sued for, during many years. The plaintiff is the daughter of Edmunds, to whom, when she was two months old, he conveyed a life-estate in the property, and she brings this action of ejectment to recover the lands and mesne profits. The conveyance to her is older than the judgments through which defendants claim, but, being voluntary, is fraudulent and void if the holders of the demands against Edmunds for goods furnished during minority were legal creditors at the date of the conveyance. At the

time the goods were furnished, Edmunds had a guardian ; and in discussing the question at issue we shall assume, as indeed the law does in the absence of proof, that they were not necessaries in contemplation of law, nor furnished under such circumstances as that their reception, of itself, imposed a legal liability upon him. The executory contracts of infants for the payment of money, not for necessaries, impose no legal liability upon them. They furnish a sufficient consideration to support contracts thereafter made, so that if ratified in any way after majority they will be enforced ; but they derive their vitality, not from the original consideration, but from the new promise or ratification. They can be ratified at common law only by an act or agreement which possesses all the ingredients necessary to a new contract, save only a new consideration. The contract made during minority will furnish the consideration, but it will furnish nothing more. All else must be supplied by the new agreement. A mere acknowledgment of the debt is not sufficient, but there must be an express promise to pay, voluntarily made ; and this is true under the common-law authorities, without reference to the provisions of our statute, which declares that the new promise or ratification must be in writing. Code 1857, p. 360, art. 8.

There cannot be said to be any contract in any legitimate sense of the term until after the act of ratification, or until after the written promise under our statute. Before ratification, it is wholly unilateral in its bearing ; that is to say, the consideration has been advanced by the adult, but there is no corresponding legal liability upon the minor. It stands, not upon the footing of a debt barred by the Statute of Limitations and afterwards revived by a new promise, because in such a case there has always been an existing, unextinguished right, since limitation affects only the remedy, and not the right ; but it is rather like a debt wiped out by a discharge in bankruptcy. In such case there is no existing debt, but there is an outstanding consideration which will support a new contract. This is the illustration used in *Hodges* v. *Hunt*, **22** Barb. 151, and in

*Taft* v. *Sergeant*, 18 Barb. 320. It is an anomaly in pleading that the plaintiff declares upon the original contract, and to a plea of infancy replies the new promise, while all the authorities declare that the recovery is not upon the original contract, but upon the new promise; and yet undoubtedly the anomaly exists. While this is true, it is clear that if the declaration should set out the whole facts, — that is, if it showed that the articles were furnished to a minor, that they were not necessaries, and that there had been no new promise, — it would be demurrable; or if judgment by default was taken upon it, it would be reversed upon appeal. The reason is that it would show no cause of action, and it would show no cause of action because of the absence of a new promise. It is the new promise, therefore, that makes the debt, and without it there is none. Tyler on Inf. & Cov., sect. 46 *et seq.*, and authorities cited.

It follows, from these well-settled principles, that the holders of claims against Edmunds which were for articles, not necessaries, furnished during minority and not ratified after majority, were not legal creditors at the date of his conveyance, and cannot predicate fraud of it, though it was voluntary.

If defendants can show that the judgments through which they hold embraced, in whole or in part, debts created after the attainment of majority, and before the date of the conveyance, or were in whole or in part for necessaries furnished during minority, under circumstances which imposed a legal liability upon the infant, they can successfully resist plaintiff's demand, but the burden of doing this rests upon them; and while there is something to suggest that debts contracted after the disability of minority had ceased, and before the execution of the conveyance, may have entered into some of the judgments, this does not clearly appear. The ruling of the court below rendered any such showing upon the part of the defendants unnecessary.

The learned judge, adopting the view that minority was a personal privilege, which could not be set up by any one but

the minor, and that he could only do so by pleading it when sued, excluded all testimony as to the debts having been contracted during minority; and this was at once an end of plaintiff's case.

He confounded therein the executed and the executory contracts of infants, and seems to have been partly, at least, led into this error by the course of counsel, who respectively contended, the one, that the making of the deed to the daughter was a disaffirmance of the minority debts, and the other, that it was not. But it is not a question of disaffirmance, but of affirmance. Executed contracts of infants must be disaffirmed or they will become obligatory; executory contracts must be affirmed or they will be null. Until affirmed, they impose no liability. There was no pretence of affirmance here, and no act of disaffirmance was necessary.

True, when sued, Edmunds failed to plead minority, and judgments went against him. From the rendition of those judgments, and not until then, the claims of the creditors became valid debts against him; but he had several years before made the conveyance to his daughter, and it was not possible for him, by then making the debts valid, to affect the title previously conveyed. It is well settled that suffering judgment to go upon a debt barred by the Statute of Limitations will not affect the title to property sold before judgment, and after the bar was complete; and *a fortiori* must this be true as to minority debts, which have no binding force until judgment.

Whether the principle would apply, as to the Statute of Limitations, where the conveyance was unsupported by a valuable consideration, we have not found settled by adjudication; but certainly it must as to the unratified minority debts of an infant, since as to them there is no legal indebtedness.

Neither the research of counsel nor our own has discovered any adjudicated case similar in its facts or wholly analogous in principle to the one at bar; but we feel satisfied that the general principles controlling the liabilities of infants must lead to the conclusion here reached.

Appellant contends that, even though the debts of her father were valid, and the conveyance to herself voluntary, the presumption of fraud is rebutted by the fact that he had abundant property outside of the conveyance with which to pay his debts; and seeks to establish this by showing that the reversion in the property, which was left in himself, was worth many thousands of dollars, the estimate being made upon the expectancy of life of an infant of two months of age; and also upon the fact that the father had other property, such as two riding-horses, cattle in the range, milk cows, gathered and unsold cotton, jewelry, wearing apparel, and provisions on hand, which in the aggregate exceeded in value the sum total of his debts.

We cannot adopt this view. In the first place, if the debts of the father were valid debts, this would not be a case of fraud in the conveyance, implied in law from its voluntary character, but rather of a conveyance expressly declared by the grantor to be made with the intention and purpose of defeating his creditors, and it could not, therefore, be upheld by showing a retention, by the debtor, of other property; and in the second place, if it was a case of fraud presumed by law from the voluntary character of the conveyance, that presumption could not be rebutted by showing the retention of the reversion in the grantor, where all his visible, tangible property is nominally conveyed to another for life, but is really left in his own possession and enjoyment; nor by showing the retention of other property, unless such other property was undoubtedly sufficient to pay all debts, and readily and plainly accessible to the creditors. The property here retained, outside of the reversion, — which, under the circumstances of this case, must be left out of view, — was evanescent in its character, easily disposable by the debtor, and difficult of being reached by the creditor, if attempted by the debtor to be secreted or sold. It does not come up to the standard laid down in the case of _Wilson_ v. _Kohlheim_, 46 Miss. 351.

There were two trials of this case in the court below. In

each of them the court erroneously excluded all the more important portions of plaintiff's testimony, and by its instructions to the jury announced principles of law not in accordance with those here announced. On the first trial, the jury, despite this action, and in disregard of the instructions of the court, found a verdict for the plaintiff, which was by the court set aside ; to which action the plaintiff excepted. The second jury, more mindful of the rulings of the court, and of their duty of receiving and conforming their action to its instructions as to the law, found a verdict for defendants. We are asked now, in reversing the judgment on the second verdict, to reëstablish the first, and enter here a judgment upon it. Ordinarily, we would do this, — that is to say, whenever the first verdict was right upon the case as it went to the jury, and the order of the court in setting it aside was erroneous, — but we cannot do so in the present case. . Here, the first verdict was not correct ; but, on the contrary, was clearly wrong on the case as it went to the jury, all the more important parts of plaintiff's testimony having been by the court excluded, and the jury having no right to disregard the instructions of the court as to the law. There was nothing, therefore, to support that verdict, and if there had been an appeal directly from it to this court, we would have been compelled to set it aside. We could not consider the truth of the testimony which was proffered and rejected, as having received the sanction of the jury, nor could we ignore the fact that, if it had been received, it might have been shown to be false, or avoided by proof of further facts which would have rebutted it. To reëstablish the verdict and enter a judgment upon it would be to punish the defendants for making ill-founded objections to evidence, by conclusively presuming that the proffered testimony was true, and that there existed no further facts which would have avoided its effects, however true it might be. The rule of reëstablishing a verdict erroneously set aside is applicable to a case where the verdict is right on the facts in evidence, and not to one where the jury has leaped over errors of law on the

part of the court, and arrived at what might, perhaps, have been a correct verdict if no error of law had occurred. Many assignments of error are made in this court. We do not notice them *seriatim*, because it is believed that the principles which must control the case are sufficiently indicated.

Judgment reversed and new trial directed.