# CASES ARGUED AND DECIDED

—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## NOVEMBER SPECIAL TERM, 1898.

---

### JAMES F. AMES ET AL. *v.* ZACH T. DORROH ET AL.

1. FRAUDULENT CONVEYANCES. *Guardian and ward. Bond. Surety. Chancery clerk.*

    The surety on a guardian's bond, from the date of its execution, is a creditor of the principal, for all sums he is required to pay because of the suretyship, within the meaning of the statute against fraudulent conveyances, and this is true of a surety on the official bond of a chancery clerk who becomes *ex officio* the guardian of an infant.

2. SAME. *Volunteers. Mala fide purchasers. Trustees malaficio.*

    A debtor's conveyance of his property without consideration, or *mala fide* if upon consideration, is fraudulent and void as to his creditors; and all grantees thereof who take without consideration, or with notice of the fraud, are in equity trustees *ex malaficio* of the property.

3. SAME. *Existing debt not necessarily a consideration.*

    The fact that the grantor in a deed was indebted, at the time of its execution, to the grantee does not constitute a consideration for the deed, in the absence of evidence that the grantee assented that the conveyance should satisfy the debt in whole or in part.

4. SAME. *Grantor's ability to make gifts. Burden of proof.*

    The burden of proof is on the grantee in a voluntary conveyance, when attacked by creditors of the grantor, to show that the latter

had at the time of the conveyance, and retained, other specific property, readily accessible, ample for the discharge of all of his debts.

5. SAME. *Existing and subsequent creditors.   Case.*

A voluntary deed from a chancery clerk to his wife is void as to the sureties on his previously executed official bond, both as to existing defaults and those afterward accruing during the term for which the bond was given.

FROM the chancery court of Noxubee county.

.HON. ADAM BYRD, Chancellor.

The appellants, Ames and others, were the complainants, and the appellees, Dorroh and others, were defendants, in the court below.   The judgment of the chancery court was in favor of the defendants, and complainants appealed.   The facts are stated in the opinion of the court.   It is interesting to note this case in connection with the following reported cases arising from the affairs of the estate of the late R. C. Patty, deceased, viz.: *Patty* v. *Williams,* 71 Miss., 837; *Ames* v. *Williams,* 72 Miss., 760; *Jones* v. *Patty,* 73 Miss., 179; *Ames* v. *Williams,* 73 Miss., 772; *Ames* v. *Williams,* 74 Miss., 404; *Rives* v. *Patty,* 74 Miss., 381.

*C. B. Ames,* for appellant.

1. Appellants have been creditors of R. C. Patty since December 24, 1883, the date of the execution of the first bond. ''A surety is a creditor of the principal obligor, and of his co-sureties, from the time the obligation is entered into.'' *Pennington* v. *Seal,* 49 Miss., 525; *Loughridge* v. *Bowland,* 52 Miss., 556, 557; *Bragg* v. *Patterson,* 85 Ala., 233 (4 So. Rep., 716); *Fearn* v. *Ward,* 80 Ala., 555 (2 So. Rep., 114); Brandt on Suretyship, sec. 177; Bump on Fraud. Con., 496.   To constitute one a creditor (as against a voluntary conveyance) it is not necessary that money be owing him at the time of the transfer.   It is sufficient if the debtor has entered into some obligation or done some act which may result in his liability to

the creditor. When this liability is ascertained, it relates back to the inception of the original undertaking, and entitles the creditor to proceed as though there was a debt due him at that time. 14 Am. St. Rep., note, p. 743; 52 Am. Dec., note, pp. 117, 118.

2. The conveyance of the farm, though dated December 25, 1883, only became operative, as against any third person, from the date of its being filed for record, January 1, 1885. Code 1880, § 1178.

3. The conveyance of the farm and of the store, both being made while the first bond was in force, and being voluntary, are *prima facie* void as to appellants, who were existing creditors of R. C. Patty at the date of conveyance, at least to the extent of the amount now due them on the first bond. *Wilson* v. *Kohlman*, 46 Miss., 346; *Swayze* v. *McCrossin*, 13 Smed. & M., 317; *Young* v. *White*, 25 Miss., 146; *Catchings* v. *Manlove*, 39 Miss., 655; *Pennington* v. *Seal*, 49 Miss., 524; *Cock* v. *Oakley*, 50 Miss., 628; *Cowan* v. *Alsop*, 51 Miss., 158; *Davis* v. *Lampkin*, 57 Miss., 506; *Hodges* v. *Hickey*, 67 Miss., 715; *Wynne* v. *Mason*, 72 Miss., 431.

4. These conveyances being voluntary and *prima facie* void, the burden of proof rests upon appellees to show that at the time of the conveyances Patty reserved ample property, readily accessible to creditors, with which to discharge his existing liabilities. *Young* v. *White*, 25 Miss., 146.

I wish to call the special attention of the court to the fact that the rule is clearly announced that this burden of proof is not satisfied except by showing the amount of property retained, the amount of existing indebtedness, and that the property conveyed, as compared with that retained and the existing indebtedness, would not be supposed to injure the safety of a debt or delay its payment. *Pennington* v. *Seal*, 49 Miss., 524; *Cock* v. *Oakley*, 50 Miss., 628; *Edmunds* v. *Mister*, 58 Miss., 776; 21 Am. Dec., 530; 29 Am. Dec., 401; 84 Am. Dec., 155; 92 Am. Dec., 479.

5. The conveyances were made by Patty with the intention of defrauding subsequent as well as existing creditors. "The authorities are unanimous that a voluntary conveyance can be set aside by subsequent creditors, if made with intent to defraud them, the only difference being that, as to subsequent creditors, the burden of proof is on them to show that the conveyance was made for the purpose of defrauding them. *Wynn* v. *Mason*, 72 Miss., 431.

6. The appellees are volunteers under Mrs. Patty, and are not *bona fide* purchasers, and, consequently, occupy the shoes of Mrs. Patty, holding no better title than hers and no worse.

It is perfectly clear that the purchasers at the foreclosure sale got no better title than that conveyed to the original trustee. Our court repudiates the doctrine that a purchaser, who has notice of an outstanding equity, can make any pretenses that he takes title discharged of that equity. *Nailor* v. *Fisk*, 27 Miss., 256; *Woods* v. *Garnett*, 72 Miss., 78.

This leaves only one question for consideration, and that is whether accepting the trust deed as security for their pre-existing liability constituted appellees, Dorroh and Patty, *bona fide* purchasers, and this can no longer be considered a "question" in this state. An unbroken and harmonious chain of cases, from the dawn of our jurisprudence, establishes the fact that they are volunteers, taking subject to equities existing against their grantor. *Rollins* v. *Callander*, Freem. Ch., 295; *Harney* v. *Pack*, 4 Smed. & M., 229; *Pope* v. *Pope*, 40 Miss., 516; *McLeod* v. *Bank*, 42 Miss., 99; *Perkins* v. *Swank*, 43 Miss., 349; *Parker* v. *Foy*, 43 Miss., 280; *Hines* v. *Pugh*, 48 Miss., 268; *Suget* v. *Boyd*, 57 Miss., 485; *Graft* v. *Bloom*, 59 Miss., 69; *Harris* v. *Lombard*, 60 Miss., 29; *Bank* v. *Strauss*, 66 Miss., 479; *Patty* v. *Williams*, 71 Miss., 837; *Dickerson* v. *Tillinghast*, 25 Am. Dec., 528; *Wood* v. *Chopin*, 67 Am. Dec., 62; *Padgett* v. *Lawrence*, 40 Am. Dec., 232; *Willis* v. *Henderson*, 38 Am. Dec., 120; *Bush* v. *Bush*, 51 Am. Dec., 678.

*J. E. Rives*, for appellees.

Appellees were not creditors of Patty until more than two years after the deed was recorded. *Pennington* v. *Seal*, 49 Miss., 524. It is true that appellants' ancestor signed the bond of Patty in December, 1883, to commence, in effect, on the first Monday of January, 1884, but that could not make them creditors from that date for the purpose of maintaining this suit. As a matter of fact, Patty did not become guardian for the Williams children until April 29, 1887. Appellants were not liable on the bond for any default of their principal occurring before April 29, 1887, nor for any default for funds received by him before that date—more than two years after the deed was properly filed for record.

Sureties are only bound to the extent to which their principal is made liable. Certainly Patty could not have been made liable for any of the Williams children's money until after he received it. Then, and then only, did he become liable to account for these funds, and his sureties could not have guaranteed his liability as to these funds until then. They might have been creditors of Patty on account of other funds received by Patty before that time, but there was no default on the part of Patty for other funds before that time, and this suit is not brought by appellants on account of having paid for any previous defaults; besides that, appellants did not become absolutely liable until default was made.

But, for the sake of argument, suppose we concede that appellants were creditors of Patty from the time he executed his bond, in December, 1883, this deed from Patty to his wife was only *prima facie* void, not *per se* void, even as to then existing creditors. The deed was not void, for the reason that Patty had ample means to satisfy all of his creditors. He was not insolvent; his financial condition was good. Because he afterwards became insolvent could not have the effect of vitiating the deed. See *Pennington* v. *Seal, supra; Wilson* v. *Kohlheim, supra; McLemore* v. *Nuchles*, 37 Ala., 674.

Without yielding the position already taken, I most earnestly submit that, even if it should be held that such a position is erroneous, still appellants have no right to this property, have no lien thereon, for it has passed out of the hands of Mrs. Patty into the hands of *bona fide* purchasers.   When she executed her trust deed to indemnify appellees, who were sureties on her official bond as administratrix of R. C. Patty, deceased, appellees thereby became *bona fide* purchasers for value, without notice of the fraud, if any existed, on the part of R. C. Patty, and hence their title became superior to the rights of any of the creditors of Patty.   There is but one line of authorities in this state on that point, and they are all to that effect. *Price* v. *Martin*, 46 Miss., 489; *Fulton* v. *Woodman*, 54 Miss., 159; *State v. Hemingway*, 69 Miss., 491.

The case of the *State* v. *Hemingway* is plain on this point. The facts of the two cases are similar.   There, Hemingway, being bound on his bond as state treasurer, and consequently a debtor to the state, after his default was made known, after it was ascertained that his sureties would have the debt to pay, he executed a trust deed upon all of his property to indemnify his sureties.   There was no new consideration for this trust deed.   Nothing whatever passed at the time from his sureties to uphold this trust deed.   There was no consideration for this trust deed except their liabilities as his sureties.   That liability had long since been incurred.   They did not afterwards become liable for any more than what they were already liable for.   Had Hemingway failed and refused to have given this trust deed, the liabilities of the sureties would not have been decreased one iota.   The giving of this trust deed did not and could not have affected their liability in the least; yet this honorable court, in passing upon this trust deed, says: "An unbroken line of adjudged cases and text books sustains the proposition that a mortgage for indemnity of sureties is valid, the liability of the surety being a sufficient consideration for such a mortgage, and such a conveyance will be held to have

precedence of any subsequent lien on the property incumbered. This is the undoubted rule as between individuals.''

Argued orally by *C. B. Ames*, for appellants, and *J. E. Rives*, for appellees.

TERRAL, J., delivered the opinion of the court.

J. F. Ames and others, the children and widow of C. B. Ames, deceased, filed their bill in the chancery court of Noxubee county against Ella H. Patty, Z. T. Dorroh, J. L. Patty, and Mrs. A. L. Jarnagin, to set aside certain alleged fraudulent conveyances, and to subject certain property therein described to the alleged equities of complainants. The bill alleges that C. B. Ames, in August, 1888, conveyed all his property, by voluntary conveyance, to his widow and children, the complainants herein, and immediately departed this life; that said C. B. Ames, in December, 1883, became one of the bondsmen, in the sum of $15,000, of R. C. Patty, as clerk of the chancery court of said Noxubee county for the term of four years, commencing the first Monday of January, 1884, and that in December, 1887, said C. B. Ames again became one of the bondsmen, in the sum of $15,000, of said R. C. Patty, as chancery clerk of said Noxubee county for the ensuing term of office of four years, commencing on the first Monday of January, 1888; that said R. C. Patty was the clerk of the chancery court of said Noxubee county continuously from the first Monday of January, 1884, until the 31st day of December, 1890, when he departed this life, utterly insolvent; that, commencing in January, 1887, certain matters of trust were committed to said R. C. Patty, by virtue of his said office of chancery clerk aforesaid, by which he became liable on his official bond for his defaults in said matters of trust in the sum of $7,776.69, and that complainants have been compelled to pay said sum of $7,776.69 to discharge the obligation their said ancestor, C. B. Ames, assumed on behalf of said R. C. Patty.

The bill further alleges that R. C. Patty, on the 25th day of December, 1883, in consideration of natural love and affection, and of one dollar, executed a conveyance to his wife, Ella H. Patty, of the west ½ of the northwest ¼ of section 25, and northeast ¼ of section 26, of township 15, range 17 east, in said Noxubee county, but that said deed of conveyance was not filed for record until the 1st day of January, 1885 (a copy of which is filed as exhibit E to the bill); that, on the 10th of August, 1887, said R. C. Patty, and the co-heirs of said R. C. Patty in the estate of his deceased father, John W. Patty, in making partition of said estate of his deceased father, and for the purpose of executing the agreement for the partition thereof between them, conveyed to said Ella H. Patty, as the share of said R. C. Patty therein, and for the recited consideration of $2,000, " that certain lot in block seven in the town of Macon, in said county and state, conveyed to their ancestor, John W. Patty, by a deed from E. H. Cogburn, dated October 10, 1879, and recorded on page 333 *et seq.* of book 12 of the records of deeds of said county " (a copy of which conveyance is filed as exhibit F to said bill); that on July 1, 1891, Mrs. Ella H. Patty became the administratrix of the estate of said R. C. Patty, deceased, with Z. T. Dorroh and J. L. Patty as her sureties on her administration bond; that on the 4th of October, 1893, a suit was brought against Ella H. Patty and her said sureties on said bond; that on the 31st of March, 1894, Ella H. Patty executed, for the benefit of said Dorroh and Patty, her said sureties, and to save them harmless on her said administration bond aforesaid, a trust deed on the real property described in exhibits E and F to complainants' bill; that on the 27th day of May, 1895, said trust deed was foreclosed, when Z. T. Dorroh and Mrs. A. L. Jarnagin purchased the property described in exhibit F to the bill of complaint, and Z. T. Dorroh and J. L. Patty purchased the property described in exhibit E to the bill of complaint; that the conveyances (copies of which are marked as exhibits E and F to the

bill of complaint) were voluntary and were executed without valuable consideration, and were, therefore, void as to the creditors of said R. C. Patty, and that Z. T. Dorroh and J. L. Patty and Mrs. A. L. Jarnagin had notice of the pendency of this suit before the purchase of said property at said trust sale aforesaid, and that each of them had actual notice before said sale of the claim of complainants in reference to said property, as set out in their bill in this behalf.

The complainants allege that the conveyances of the property described in exhibits E and F to the bill of complaint, are fraudulent in law as to them, because, as they say, they were voluntary and without consideration, and because, at the time of their execution, C. B. Ames, their ancestor, had in equity a right to look to said property in exoneration of his suretyship of said R. C. Patty, and the bill prays that they be exonerated of the payment of said $7,776.69, by subjecting the property described in exhibits E and F to its reimbursement to them, and that the conveyances of said property to Mrs. Patty, and by Mrs. Patty to Dorroh and Patty, and all subsequent conveyances thereof, be canceled. The respondents say they are *bona fide* purchasers of said property described in exhibits E and F to the complainants' bill, and they especially insist that the conveyances of the said property, described in exhibit F, to Ella H. Patty, was for a valuable consideration, and that both it and the conveyance of the property described in exhibit E were made long before any defaults occurred on the part of R. C. Patty as a fiduciary in the trusts confided to him, and when the said R. C. Patty was solvent, and that said conveyances to said Ella H. Patty are good and valid in law, and that the respondents have the legal title and equity superior to that of the complainants in and to said property; that even if the conveyance set out as exhibit F to complainants' bill had been without consideration, yet said R. C. Patty, at the time of its execution, was amply able, in conformity with the law of the

land, to make such a gift to his wife without injury to his creditors, and that the same is good and valid in law.

It appeared from the evidence that defaults of said R. C. Patty, to the extent of several thousand dollars, occurred in 1887, and before the first Monday of January, 1888, and that defaults for the remainder of the sum, aggregating $7,776.69, occurred after the execution of the bond of said R. C. Patty as chancery clerk, in December, 1887. By the laws of the state of Mississippi the official bond of R. C. Patty, as clerk of the chancery court of Noxubee county, operated as a security for the guardianship and other fiducial trusts committed to him by the chancery court of said county, and he and his sureties were liable thereon. It is a settled rule of law that the surety on a guardian, administration, or other fiducial obligation, is, in contemplation of the statute of frauds, a creditor of the principal in such bond from the date of its execution, though no default occurs until long afterwards. The liability, whenever happening, relates back to the date of the contract; and so it must be in this case, that C. B. Ames was a creditor of R. C. Patty for all sums of money subsequently paid by complainants for defaults of said Patty occurring after December 24, 1883, and before the first Monday of January, 1888. *Choteau* v. *Jones*, 50 Am. Dec., 463; *Greer* v. *Wright*, 52 Am. Dec.; 117; *Fend* v. *Weeks* (104 Ala.); 53 Am. St. Rep., 50..

In equity, every person who gives no specific security for the payment of his debts is deemed as holding his property in trust for his creditors, and any conveyance of it by him, without consideration, or *mala fide* if upon consideration, is void as to his creditors, and, as to them, he is considered the owner of such property, and all grantees thereof, who take as volunteers, or without consideration, or who take the same with notice of the trust, are considered in equity trustee *ex maleficio* of such property, and may be made to answer to creditors for said property or for its value. *Heath* v. *Page*, 63 Pa. St., 108; Bump on Fraud. Con., p. 14.

That the conveyance by Mr. to Mrs. Patty of the property described in exhibit E was voluntary and without consideration is plain, and we think it equally clear that the conveyance of the property described in exhibit F was voluntary and without consideration. It is true R. C. Patty was owing Mrs. Patty $2,000, but no acquittance was given therefor, nor was there any understanding that the conveyance was to discharge said debt. It is impossible for Patty to have paid his wife a debt of $2,000 by conveying property to her, except with her consent. Her right was to have the $2,000, unless she had consented to take property in payment of it. There is no evidence of such consent in this case. The claim that Patty was able to make a gift of these properties to his wife, as being a suitable provision for her, because he had ample other property to discharge all his debts, cannot be maintained. A debtor being unable to pay a debt when called upon by the creditor, a presumption arises that he could not have done so at any previous time, and any intervening conveyances of property is considered fraudulent and void, and it is incumbent on the party holding such property, and insisting upon such claim, to show that such debtor, at the time of conveyance, retained other specific property, readily accessible, and ample for the discharge of all his debts, and this burden has not been met in this case. *Edmunds* v. *Mister*, 58 Miss., 776; *Hagerman* v. *Buchanan*, 14 Am. St. R., 750; *Wilson* v. *Kohlheim*, 46 Miss., 366–367.

The respondents are volunteers; they are not *bona fide* purchasers for value. They had notice of the equity of complainants before the sale under their trust deed, and the prior equity of complainants give them the better right to enforce the trust, which equity, for their protection, impresses upon the property in controversy. Bump Fraud. Con., 483.

Where conveyances are set aside as fraudulent as to existing creditors, it usually follows that such conveyances fail as to subsequent creditors, and, under the circumstances of this case, we are of the opinion that the conveyances herein attacked

are void as to the complainants to the full sum of $7,776.69, paid by them. *Thompson* v. *Dougherty*, 12 S. & R., 448; *Coolidge* v. *Melvin*, 42 N. H., 510; *Agerman* v. *Buchanan*, 14 Am. St. Rep., 732; *Carlisle* v. *Rich*, 8 N. H., 44; Bump on Fraud. Con., 314.; *Id.*, 317.

*Wherefore the decree of the chancery court is reversed, and the case is remanded, to be proceeded in according to the principles herein announced.*