**FIRESTONE TIRE AND RUBBER COMPANY, Plaintiff,**

v.

**Gladney HOOKER and J. L. Otts, Defendants.**

**No. W-C-28-61.**

United States District Court
N. D. Mississippi, W. D.
March 20, 1963.

Armis E. Hawkins, Houston, Miss., Frank J. Glankler, Jr., Memphis, Tenn., for plaintiff.

Jeff Busby, Houston, Miss., for defendants.

CLAYTON, District Judge.

In an earlier case in this court, plaintiff obtained a consent judgment against the defendant, Gladney Hooker, dated the 27th day of November, 1961. Complaint was pending for several months before judgment in that case. Six days before the date of the entry of that judgment, on November 21, 1961, a deed dated the 25th day of October, 1961, was filed for record in Chickasaw County, Mississippi, which purported to convey certain real estate therein described from the defendant, Gladney Hooker, as grantor, to the defendant, J. L. Otts, as grantee. Gladney Hooker had purchased this property for a consideration of $5900.00 several years before the time with which we are concerned, and afterward made some improvements on the dwelling house thereon. In 1961 Hooker negotiated a loan with the Federal Land Bank with the subject property as security and executed a deed of trust to secure the payment of $6100.00 on the 12th day of July, 1961, which was recorded on the 14th of July, 1961. Testimony of appraisers placed the present value of this property as low as $7500.00 and as high as $13,500.00. It seems reasonable to say that this property now has a sound value of at least $10,000.00.

This is an action to set aside the conveyance from Hooker to Otts and to subject this property to the payment of the aforementioned judgment. Other facts pertinent to disposition, about which there is little controversy, will be set out hereafter.

1) The same person who prepared the deed from Hooker to Otts testified that a few days later she prepared a deed to convey the very same property from Otts to Hooker and that this deed was signed and acknowledged by Otts. This witness testified that this deed was handed to Hooker. It was never recorded and Hooker testified that he later destroyed it. His stated reasons for so doing will be mentioned later.

2) Hooker testified that prior to the execution of the deed from him to Otts that he was in desperate financial condition and persuaded Otts, who was his employee in a filling station business, to obtain a loan from a small loan company by giving his household furniture and furnishings as security and to lend the proceeds of this loan to Hooker. These proceeds, he said, were $800.00. Additionally Hooker testified that he obtained from an oil company approximately $1,000.00 in credit against a credit card which had been issued in the name of defendant Otts. Just how this debt was retired and by whom is not clear from the evidence except that Hooker did claim it was a debt owed to Otts by him.

3) Hooker admitted that at the time of the deed from him to Otts, he, Hooker, was hopelessly involved financially. Both Hooker and Otts testified that the deed was in fact given to Otts for security for the obligations running from Hooker to Otts, claimed by them substantially as aforementioned, and that the deed from Otts to Hooker was intended in substance to give Hooker the right to repurchase upon payment to Otts of the entire indebtedness owed. Hooker said that when it became evident that he

could not repay Otts, then he, Hooker, destroyed the deed from Otts to him. He was not certain as to the date when this was done.

4) The deed from Hooker to Otts recited a nominal consideration and did not have revenue stamps in any amount thereon. Both defendants agree that Hooker was obligated to pay taxes for the tax year 1961 and Hooker says he did not have funds with which to put the revenue stamps on the deed nor with which to pay these taxes when they became due. Otts said he paid the taxes to protect his property.

5) Otts did not go into actual physical possession of this property until the first or middle of July, 1962. However, he testified that Hooker's brother was in possession on a rental agreement from Hooker at the time the deed was made and that this brother paid to him, Otts, a monthly rental from the date of the deed from Hooker to Otts until the date he, Otts, moved on the property. Both defendants admitted that Hooker got the crops raised on this property in 1962.

6) There is no question about it: The conveyance from Hooker to Otts made Hooker hopelessly insolvent.

7) Plaintiff invokes, in these circumstances, the provisions of § 265 of the Mississippi Code of 1942, which reads as follows:

"§ 265. *Fraudulent conveyances.*

"Every gift, grant, or conveyance of lands, tenements, or hereditaments, goods or chattels, or of any rent, common or other profit or charge out of the same, by writing or otherwise; and every bond, suit, judgment, or execution had or made and contrived of malice, fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors of their just and lawful actions, suits, debts, accounts, damages, penalties, or forfeitures, or to defraud or deceive those who shall purchase the same lands, tenements, or hereditaments, or any rent, profit, or commodity out of them, shall be from henceforth deemed and taken only as against the person or persons, his, her, or their heirs, successors, executors, administrators, or assigns, and every of them whose debts, suits, demands, estates, or interests by such guileful and covinous devices and practices shall or might be in any way disturbed, hindered, delayed, or defrauded, to be clearly and utterly void; any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

"And moreover, if any conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it shall be taken to be fraudulent within this statute, unless the same be by will duly proved and recorded, or by writing acknowledged or proved; and such writing, if the same be for real estate, shall be acknowledged or proved and filed for record in the county where the land conveyed is situated, and, if for personal property, then in the county where the donee shall reside or the property shall be; and the proof or acknowledgment in either cases shall be taken or made and certified in the same manner as conveyances of lands and tenements are by law directed to be acknowledged or proved, unless, in the case of personal property, possession shall really and bona fide remain with the donee."

■ Many of the badges of fraud identified in the cases arising under this statute are present here. On the basis of the current value of this property aforementioned, it is clear that the *consideration* flowing from Otts to Hooker at the time the conveyance was executed was substantially less than the value of the equity then owned by Hooker. This is true even if the incredible version of defendants as to how any consideration arose is accepted at face value. There was some *secrecy* connected with the

transaction since the deed from Hooker to Otts was retained in Hooker's possession almost a month before Hooker lodged it for record. The transaction under question here (which was a part of what defendants claimed was a larger transaction) was *not in the usual course or mode of doing business*. At the time the Hooker-Otts deed was executed and for some good while before, Otts had been an employee of Hooker, and yet these defendants say that this employee was the creditor of the employer to such an extent that Otts took over the business of Hooker as the result of an informal, unwritten understanding and undertook to run it as his own until January, 1962, at which time, they say, it was turned back over to Hooker, again, with no written document of any kind evidencing their agreement. Otts took the deed and took over the operation of Hooker's business at a time when *both of these defendants knew that Hooker was insolvent*. And, both of these defendants admit that this was in fact, at least initially and for a short time, a *security transaction and not an absolute deed*. To repeat, Hooker transferred all of his property to Otts, making himself completely *insolvent*. Also, there is no question but that Hooker retained control of this property for some time after this transaction and thus retained *possession* which is another badge of fraud. Additionally, it is well to note that Otts' circumstances were such that he could not have qualified, at the time of this transaction, for a loan against this property of $6100.00. It is doubtful that he could have qualified for a loan against this property of $5000.00 because of his low income and his illiteracy. Thus, by analogy at least, he was not a person who had any "use" for this property. *Lack of use* is also one of the badges of fraud.

8) In addition to what has thus far been said, there was also the unequivocal testimony of a disinterested witness to the effect that in a conversation with Otts after this questioned transaction, Otts stated that he had the deed to the Hooker property to help Hooker "beat a debt". It seems safe to say, therefore, that the underlying purpose of this deed was to hinder, delay or defraud plaintiff in the collection of their debt represented by the judgment obtained by them against Hooker, as aforementioned.

Ample authority is found in the reported cases of the State of Mississippi for setting aside conveyances which are analogous to the case at bar in one or more of the particulars enumerated above.

The modern case of Blount v. Blount, 231 Miss. 398, 95 So.2d 545, 96 So.2d 232, 97 So.2d 240 (1957) cites with approval the case of Ames et al. v. Dorroh et al., 76 Miss. 187, 23 So. 768 (1898), and reviews much of the case law of the intervening 59 years.

The Ames and Blount line of cases are authority for the proposition that a debtor is a trustee of his property for the benefit of his creditors, and, additionally, that the burden of proof is on the debtor to show a fair consideration for any conveyance of his property that he might make during his indebtedness. As aforementioned, the defendants in this cause wholly failed to show that a fair or an adequate consideration passed between them. The transaction between Otts and Hooker, viewed in its best light, falls short of the requirements of the law.

Ames and Blount also state the important rule that where there is the claim, as there is here, that the deed was to satisfy an antecedent debt, the following conditions must be unequivocally met; first, there must be *clear and convincing* proof of the existence of that antecedent debt; second, there must be a *full disclosure of the details* and particulars of the debt; and, third and most importantly, it must clearly appear that the *conveyance was made to satisfy that debt*. *None* of these conditions were met in the case at bar.

Additionally, these cases say that even if the consideration was deemed to be adequate (which in this case it was not) a conveyance of property by a debtor

486

would be void if made *mala fide* and the grantee had notice of the true reason for the conveyance. Here Otts undoubtedly knew of Hooker's financial plight, and he had notice that Hooker had conveyed the property to evade his creditors.

For the aforementioned reasons, this court is of the opinion that the deed dated the 25th day of October, 1961, and filed for record in Chickasaw County, Mississippi, which purported to convey certain real estate from Gladney Hooker, grantor, to J. L. Otts, grantee, must be set aside and the prayer of the complaint granted so as to subject said property to the lien thereon of plaintiff's aforementioned judgment against Hooker.

Judgment may be prepared for entry in accordance herewith.